# IN THE MATTER OF THREE MINORS,

Nos. 14208, 14583, 14603

## RICKELL W., A Minor, Appellant, *v.* THE STATE OF NEVADA, Respondent.

No. 14208

## KEVIN P., A Minor, Appellant, *v.* THE STATE OF NEVADA, Respondent.

No. 14583

## ANGELO W., A Minor, Appellant, *v.* THE STATE OF NEVADA, Respondent.

No. 14603

July 3, 1984                                                684 P.2d 1121

*David Parraguirre,* Public Defender, *Robert George,* Deputy Public Defender, Washoe County, for Appellant Rickell W.

*Brian McKay,* Attorney General, Carson City; *Mills Lane,* District Attorney, *Michael L. Mahaffey,* Deputy District Attorney, Washoe County, for Respondents.

*Morgan D. Harris,* Public Defender, *Victor John Austin,* Deputy Public Defender, Clark County, for Appellants Kevin P. and Angelo W.

*Brian McKay,* Attorney General, Carson City; *Robert J. Miller,* District Attorney, *James Tufteland,* Deputy District Attorney for Respondents.

## OPINION

By the Court, SPRINGER, J.:

These three consolidated cases involve the certification or transfer of juveniles Rickell W., Kevin P., and Angelo W. from juvenile to adult court. The three cases are reversed and remanded to juvenile court for reconsideration in accord with the constitutional requirements of Kent v. United States, 383 U.S. 541 (1966) and the substantive standards set out in In the Matter of Seven Minors, 99 Nev. 427, 664 P.2d 947 (Adv. Opn. No. 90, June 9, 1983).

### I.  *PROCEDURAL CONSIDERATIONS.*

A.  *Necessity for Statement of Reasons for Transfer Decision.*

In the case of *Angelo,* no statement of reasons for the transfer decision was given by the juvenile court. In *Kent* the United

States Supreme Court applied to transfer proceedings a procedural standard of fundamental fairness. Such a standard requires that juveniles be given a hearing, the right to counsel, access to relevant court studies and reports, and a statement of reasons for the waiver decision. The statement of reasons need not be in the form of conventional findings of fact, but there must be a statement of reasons which is sufficient to show that the statutory requirement of "full investigation" has been met so as to permit meaningful appellate review.

B. *Prosecutive Merit.*

The triggering event for the institution of transfer proceedings is the charged commission of a felonious offense by a juvenile 16 years of age or older. As mentioned in *Seven Minors* there must "prosecutive merit" to the charge.[1] Prosecutive merit exists if there is evidence upon which a grand jury would be expected to return an indictment; that is to say, when probable cause exists to believe that the subject juvenile committed the charged felony.

Requiring the state to establish prosecutive merit of the felony charge serves two purposes. The first is the furtherance of judicial economy. There is no point in the court's considering

[1] "Prosecutive merit" is a term that entered the juvenile justice scene by way of an appendix rather gratuitously attached to the *Kent* decision. The appendix sets out a "policy memorandum" that had been put into use by a judge of the juvenile court of the District of Columbia. This memorandum enumerated eight "determinative factors which will be considered by the Judge in deciding whether the Juvenile Court's jurisdiction over such offenses will be waived." Among these factors are listed several substantive dispositional factors such as the nature and seriousness of the offense and the past record of the juvenile. Also included are such non-dispositional factors as the "disirability of trial and disposition of the entire offense in one court when the juvenile's associates in the alleged offense are adults" and "whether there is evidence upon which a Grand Jury may be expected to return an indictment," that is to say "prosecutive merit." These two items on the list, sending juveniles to adult court when they had adult partners-in-crime and making sure there was sound basis for prosecution in the event of transfer, are based on judicial expediency and do not relate directly to the dispositional merits of the transfer process.

While it can be said that a minor has the right to an adversarial hearing on the substantive issues relating to the transfer decision, this is not true of non-dispositive, non-dispositional issues such as prosecutive merit and joinder of adult and juvenile prosecutions. These matters are not "critically important" (*see Kent* at 556) to the transfer decision; and this is another reason for holding that a juvenile does not have a *right* to an adversary probable cause hearing. In this state juveniles are given such a hearing only for the purposes mentioned in the body of the opinion.

the difficult transfer issues until after it has been determined that a sound basis for prosecution exists in the event that transfer is effectuated.

Another purpose in requiring a showing of prosecutive merit is that it provides a reasonable safeguard against juveniles' being made subject to inherently fruitless transfer proceedings or to having to defend against unsupportable criminal prosecutions.

■■■■■■■■■

Because of these considerations the first business of the juvenile court in a transfer proceeding should be a resolution of the threshold requirement of prosecutive merit. The necessary determination of probable cause can be made preliminarily by the court on the basis of the written record. An adversary hearing is not required, and the probable cause finding may be based on evidence taken from the petition, sworn investigative reports, witnesses' affidavits, police affidavits, or other informal but reliable evidence.

■■■■■■■

Due process does not require that a juvenile be given an adversary hearing comparable to the preliminay examination provided for in NRS Chapter 171. The process of finding probable cause in transfer matters is comparable to the finding that must be made in pre-adjudication detention matters.

In detention cases the "standard—probable cause to believe the suspect has committed a crime—traditionally has been decided by a magistrate in a nonadversary proceeding on hearsay and written testimony, and the Court has approved these informal modes of proof." Gerstein v. Pugh, 420 U.S. 103, 120 (1975). After such an informal proof a youth may be properly and constitutionally detained; there is no reason why similar proof cannot support a finding of the existence of the level of prosecutive merit necessary to serve the ends of judicial economy and individual protection referred to above.

■■■■■■■

Transfer proceedings are essentially dispositional in nature and not adjudicatory. No determination of guilt or innocence is made. A juvenile should not be entitled to *two* preliminary examinations, one at the juvenile level and another at the adult level. Consequently, the state may be said to have met its initial burden of showing prosecutive merit if proofs consistent with the holding in *Gerstein* can be presented.

Even though there is no fundamental right to an adversarial hearing on the prosecutive merit issue, the court is not completely without restriction in making the necessary probable

cause determination. For example, fairness requires that probable cause not be based entirely on unsworn hearsay evidence. Likewise, the determination cannot be based solely on the opinion of prosecutorial officials. *See Gerstein* at 118.

Similar concerns about fairness arise when a preliminary probable cause finding is challenged by the juvenile. In the concluding summary of *Seven Minors* we allude to the need for a hearing in such instances. Fairness and due process do require that some kind of hearing be conducted in order that a juvenile be afforded an opportunity to present contrary evidence in opposition to the preliminary finding. This does not mean that the juvenile is entitled to a full adversary hearing; it does mean that he should not be foreclosed from presenting his side of the case. The nature and extent of such informal hearings will be left to the sound discretion of the hearing judge.[2]

Applying these principles to the case at hand, it is apparent first in *Rickell* that even though a preliminary probable cause determination was not made, there was ample evidence to support such a finding. Therefore, we decline to reverse *Rickell* on this issue.

In the cases of *Angelo* and *Kevin*, the element of prosecutive merit appears to have been based solely on a statement that the district attorney "believes the evidence currently available merits prosecution." This conclusory statement is clearly not enough under *Gerstein* and the ruling of this case; therefore, *Angelo* and *Kevin* are reversed and remanded for failure to establish properly the required finding of prosecutive merit.

## II. *SUBSTANTIVE CONSIDERATIONS.*

As pointed out in *Seven Minors*, the juvenile courts have in the past necessarily focused their interest on the welfare of the individual child before the court. As a consequence, juvenile courts have, in making transfer decisions, centered their attention on the child's best interests and have been concerned primarily with the question of whether the child before the court was likely to benefit from the juvenile court system. If, under

---

[2]It is noted that these matters could be expedited by rule or order requiring advance notice of the juvenile's intention to contest the probable cause issue. Although the ultimate judgment on prosecutive merit and the merits of the transfer decision must be made by the juvenile judge, there is no reason why a contested issue of probable cause could not be referred to a master or a referee for findings and recommendations.

the traditional rule, a child was determined to be "amenable" to juvenile court treatment, the child was retained within the jurisdiction; if not, the child would be transferred to the adult criminal court.

*Seven Minors* presents a departure from traditional juvenile court jurisprudence. Instead of allowing considerations concerning the "welfare of the child" to predominate, juvenile courts will emphasize the public interest and will concern themselves with whether or not justice and the public interest require that the offender be punished as an adult. Some youthful offenders, by reason of their conduct, can no longer be properly considered as children to be received by a childrens' court. Such offenders must, in the public interest and in the interest of justice, be removed from the childrens' court, the juvenile court, and be subjected to the punishment and accountability which we all must face if we engage in the commission of criminal offenses.

In *Seven Minors* substantive standards for transfer were declared. These standards were based primarily on the conduct of the minor rather than on a subjective evaluation as to how the minor might respond to juvenile court "treatment." Thus, juvenile courts consider, as primary factors in making the transfer decision, the nature and seriousness of the charged offense or offenses and the persistency and seriousness of past adjudicated or admitted criminal offenses; that is to say, they are interested primarily in the *conduct* of a minor rather than in subjective predictions about what might or might not happen in the juvenile's life if he is kept and "treated" in the juvenile court system. Juvenile courts may also consider other, subjective factors, for example, mitigating circumstances which appear from an evaluation of a minor's personal characteristics such as age, maturity, character, personality, attitude, family relationships, and the like. Such factors alone may not be used to support a decision to transfer, but they may be considered in deciding that justice does not require transfer in the particular case.

Adoption of these objective, public interest oriented standards serves the ends of justice and is far more likely to hold youthful criminal offenders accountable for their crimes. Applying such standards will not allow for lenient treatment in juvenile courts for those who commit serious or repetitive offenses. Also, the practice of transferring, out of frustration, older youths who have committed relatively minor or trivial

offenses cannot take place. We disapprove of any practice which results in young persons who come within the statutory jurisdictional age limits of the juvenile court being tranferred to adult court because a "treatment program" is supposedly unavailable to the juvenile court or because the youth has an unfortunately bad attitude. If minors are transferred to the adult court under the standards established in *Seven Minors,* they will be transferred largely because they deserve it or because the public interest demands it.

It is quite apparent from the record that the *Seven Minors* standards were not applied in these cases. They were all decided before *Seven Minors,* and it is understandable that generally accepted child welfare standards were applied in these cases.

Examination of the records in the three cases reveals that consideration under the *Seven Minors* standard might bring about different results.

A.   *Rickell W. (Case No. 14208).*

The record in this case shows that the juvenile had no past delinquency record; he has never voluntarily admitted nor has he been adjudicated to have committed any criminal offense. He stands charged now with a number of property offenses, all of which originate out of the same criminal episode. The record indicates that officials encouraged some of this conduct by way of their attempts to further a "sting-type of operation." It may be that when considered in light of *Seven Minors,* it will appear to the juvenile court that the charged offenses are so serious and threatening as to require adult prosecution and adult punishment; it may not. In any event, this case should be considered in accordance with the rule stated in *Seven Minors.* The case is reversed and remanded with instructions to reconsider the transfer decision accordingly.

B.   *Kevin P. (Case No. 14583).*

The case of *Kevin P.* also calls for reevaluation under *Seven Minors* standards for it appears that *Seven Minors* standards were not applied and that if they were, transfer would be unlikely. Kevin's "record" consists of his having had possession of a stolen moped. He is now charged with possession of a stolen Datsun. Transfer quite possibly was improperly based more on unavailability of customary juvenile court services for Kevin, who was seventeen at the time, than on his record or seriousness of the charged offense. This question must be resolved upon reconsideration by the juvenile court of the proper *Seven Minors* factors thought to support transfer; the case is therefore reversed and remanded for this purpose.

C.   *Angelo W. (Case No. 14603).*

Examination of the record in *Angelo W.* shows that Angelo has previous adjudications of burglary and larceny and that he has been committed to the Nevada Youth Training Center. We do not find any substantive abuse of discretion under *Seven Minors,* and although this case must be reversed on procedural grounds, it is not reversible on substantive grounds.

### III.   *CONCLUSION.*

The three cases are reversed and remanded so that they can be reconsidered in the light of *Seven Minors* and this opinion.

MANOUKIAN, C. J., MOWBRAY, STEFFEN, and GUNDERSON, JJ., concur.