**UNITED STATES of America ex rel. Emanuel PEDROSA, Petitioner-Appellant,**

v.

**Allyn SIELAFF, Respondent-Appellee.**

No. 77–1912.

United States Court of Appeals, Seventh Circuit.

Argued April 20, 1978.

Decided April 26, 1979.

Leo E. Holt, Harvey, Ill., for petitioner-appellant.

Stuart W. Opdycke, Asst. Atty. Gen., Chicago, Ill., for respondent-appellee.

Before FAIRCHILD, Chief Judge, MOORE, Senior Circuit Judge *, and PELL, Circuit Judge.

PER CURIAM.

Petitioner was convicted of murder by an Illinois Court, and sentenced to imprisonment. He was a 16 year old juvenile, but had been prosecuted as an adult, pursuant to Section 702–7(3), Ch. 37, Ill.Rev.Stat. (1971). State remedies having been exhausted, petitioner sought *habeas corpus,* claiming that the so-called transfer statute was unconstitutional because it lacked a requirement for a hearing and failed to fix standards for transfer.

The district court concluded that, because petitioner had been given a hearing on the matter of transfer, he lacked standing to complain that the statute failed to require a hearing. The court decided, however, that the statute was unconstitutional because it lacked any guidelines or standards for decision. The offense occurred October 8, 1972. In 1973 the transfer statute had been amended, after petitioner's conviction, so as to require a hearing, the consideration of several listed matters, and a finding that it is not in the best interest of the minor or of the public to proceed under the Juvenile

---

* Senior Circuit Judge Leonard Page Moore of the United States Court of Appeals for the Second Circuit is sitting by designation.

Court Act. The district court reasoned that there was no *ex post facto* problem in applying the amended statute to petitioner's case, and ordered that petitioner be released on a specified date unless a transfer hearing had been commenced to determine, in conformity with the amended statute, whether the transfer to the criminal division had been proper.

Petitioner has appealed from the conditional character of the order for release, arguing that the application of the amendment to him would constitute an *ex post facto* increase in punishment for 1972 conduct. The respondent state custodian did not appeal, but argues that the earlier transfer statute is constitutional and, alternatively, that resort to the amended statute is not the application of an *ex post facto* law.

I

Petitioner moved that we strike the portion of respondent's brief which argued that the 1972 form of the transfer statute is constitutional. The motion is denied. Respondent not having appealed, we could not reverse or modify the judgment so as to make it more favorable to respondent. Nevertheless, respondent is free to argue the statute's constitutionality in support of affirmance. If the district court erred in holding the statute unconstitutional, the court had no basis for ordering any release, and petitioner would be in no position to challenge the conditional character of the release which was ordered. Moreover petitioner's *ex post facto* argument is premised on the unconstitutionality of the statute in its 1972 form.

Ill.Rev.Stat.1971, Ch. 37, ¶ 702–7(3) provided:

"If a petition alleges commission by a minor 13 years of age or over of an act which constitutes a crime under the laws of this State, the State's Attorney shall determine the court in which that minor is to be prosecuted; however, if the Juvenile Court Judge objects to the removal of a case from the jurisdiction of the Juvenile Court, the matter shall be referred to the chief judge of the circuit for decision and disposition. If criminal proceedings are instituted, the petition shall be dismissed insofar as the act or acts involved in the criminal proceedings are concerned. Taking of evidence in an adjudicatory hearing in any such case is a bar to criminal proceedings based upon the conduct alleged in the petition."

The statute permits initial decision by the prosecutor, but clearly provides for judicial review if the juvenile court judge objects to the transfer. *People v. Rahn,* 159 Ill.2d 302, 319 N.E.2d 787 (1974). The removal provision does not specify standards to be followed by the State's Attorney in deciding on the type of procedure to be followed, or by the juvenile court judge in deciding whether to object to removal, or by the chief judge in making the ultimate decision on objection. Several months before the facts of this case arose, the Supreme Court of Illinois had held that the purposes of the Juvenile Court Act set forth in Ch. 37 § 701.2 "can be presumed to be considered by State's Attorneys in making the determinations." *People v. Handley,* 51 Ill.2d 229, 282 N.E.2d 131, 135 (1972). This construction, read into the removal statute, would bind both the prosecutor and the juvenile court judge and thus supply the standards not literally present.

The significance to the juvenile of the decision whether to prosecute him criminally instead of pursing a delinquency proceeding has been underscored by *Kent v. United States,* 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966) and *Breed v. Jones,* 421 U.S. 519, 535–41, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975). The Supreme Court has not, however, specified the elements of due process constitutionally required in order to make that decision, whether made judicially or otherwise.

This court has upheld a transfer under the provisions of the statute now before us. *United States ex rel. Bombacino v. Bensinger,* 498 F.2d 875 (7th Cir. 1974). We con-

sidered the test to be whether there was "fundamental procedural unfairness" in the proceeding, and found that the absence of a statement of reasons could not in that case be termed fundamentally unfair.

This court did not directly address the question whether due process required that the transfer statute spell out a standard for the prosecutor's decision to transfer or for the judge's decision not to object. Many courts have seemed to consider that some express limitation on judicial discretion must be present in a valid transfer statute. *State v. Speck*, 242 N.W.2d 287 (Iowa Sup. Ct.1976); *In re F.R.W. v. State*, 61 Wis.2d 193, 212 N.W.2d 130 (1973); *In re Welfare of I.Q.S. v. Parker*, 244 N.W.2d 30 (Minn. 1976); *People v. Peters*, 397 Mich. 360, 244 N.W.2d 898 (1976). We are not sure why the presence of a standard in a transfer statute is a requirement of due process; the more important question seems to us to be whether in the particular proceeding it appears that this matter of considerable significance to the individual has been arbitrarily decided.

It seems to us that the transfer statute committed the question whether to object to the removal to the discretion of the juvenile court judge. It reasonably follows, especially in the light of the purposes of the Supreme Court of Illinois in *Handley*, decided before the transfer proceeding now before us, that such judge must exercise his discretion in the light of the purposes of the Juvenile Court Act. These purposes are spelled out in Ill.Rev.Stat., Ch. 37, § 701–2, along with a command to administer the Act in a spirit of humane concern and to construe it liberally to carry out such purposes:

"(1) The purpose of this Act is to secure for each minor subject hereto such care and guidance, preferably in his own home, as will serve the moral, emotional, mental, and physical welfare of the minor and the best interests of the community; to preserve and strengthen the minor's family ties whenever possible, removing him from the custody of his parents only when his welfare or safety or the protection of the public cannot be adequately safeguarded without removal; and, when the minor is removed from his own family, to secure for him custody, care and discipline as nearly as possible equivalent to that which should be given by his parents, and in cases where it should and can properly be done to place the minor in a family home so that he may become a member of the family by legal adoption or otherwise. (2) In all proceedings under this Act the court may direct the course thereof so as promptly to ascertain the jurisdictional facts and fully to gather information bearing upon the current condition and future welfare of persons subject to this Act. This Act shall be administered in a spirit of humane concern, not only for the rights of the parties, but also for the fears and the limits of understanding of all who appear before the court. (3) This Act shall be liberally construed to carry out the foregoing purpose and policy."

Although different formulations could of course have been used, the real question is whether petitioner was entitled to something more specific as a matter of due process. Given the nature of the problem, there is a question whether anything more specific would have been meaningful. We think there is enough to instruct the judge that he is to decide whether criminal prosecution is the more appropriate social response to the misconduct charged against petitioner than a delinquency proceeding, and that his discretion must be exercised in the light of the purposes of the Act. This breadth of discretion seems to us commensurate with the nature of the problem before the court.

Petitioner was arrested October 9, 1972 for alleged murder and aggravated battery. The next day a petition was filed for adjudication of wardship as a delinquent. A detention hearing was held. Petitioner was represented by counsel. After testimony

the court found probable cause for continued detention.

Subsequently, the State's Attorney petitioned for transfer for prosecution. He set forth the charges, alleged they were serious enough that the protection of the community required transfer, that the offenses were aggressive, violent and premeditated, that defendant was 16 and within about one month of 17; that he had certain prior police difficulties, and that prospects for rehabilitation by facilities available to the juvenile court were very unlikely. Petitioner objected, there was a hearing, and the court entered an order of no objection to the transfer and the juvenile proceedings were dismissed.

At trial it appeared that the offenses resulted from youth gang rivalry. Petitioner and two companions, armed with shotguns, fired repeatedly into a group of five youths walking down a sidewalk. Two deaths resulted. Petitioner was found guilty of two counts of murder and one of aggravated battery.

 As noted by the district court, there was a full hearing on the question of transfer, and although the judge did not articulate reasons, there is nothing to indicate an abuse of discretion measured by the purposes of the Act. We conclude that the transfer statute was not unconstitutional as applied to petitioner.

## II

 If, as we think, the 1972 form of the transfer statute is valid, petitioner cannot complain about having a hearing in conformity with the amended statute. We consider petitioner's *ex post facto* challenge only in the alternative, assuming, contrary to our conclusion in Part I, that the 1972 form of the transfer statute was unconstitutional.

It must be remembered that in October, 1972, the laws then in effect prescribed the criminal punishment for murder. A juvenile aged 13 or older was on notice of the possibility of prosecution as an adult and of the maximum liability should he commit that crime.

Petitioner's *ex post facto* challenge is structured as follows: (1) The transfer statute was void. (2) Therefore at the time of the offense there was no law providing criminal punishment for murder (or other offense) by a juvenile. (3) The amended transfer statute, if it be applied to permit criminal punishment of a juvenile for a murder committed before the amendment, provided punishment not prescribed by law at the time of the offense. (4) Therefore the amendment is an *ex post facto* law if applied to conduct committed before the amendment.

An indistinguishable challenge was rejected by the Supreme Court in *Dobbert v. Florida,* 432 U.S. 282, 297–98, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977). There the death penalty statute on the books at the time of defendant's offense had been held void. A law providing such penalty and avoiding the defect in the earlier statute, was enacted and applied to the defendant on account of the murder committed before the corrective law was enacted. The Supreme Court rejected the theory for which petitioner contends here.

The judgment appealed from is modified so as to extend the time allowed for commencement of a transfer hearing to 90 days after filing of our mandate, and, as so modified, it is AFFIRMED.