ALEJANDRO JOSE CASTILLO, APPELLANT, *v.* THE STATE OF NEVADA, RESPONDENT.

No. 24559

May 23, 1994                                        874 P.2d 1252

[Rehearing denied September 6, 1994]

*Richard F. Cornell,* Reno, for Appellant.

*Frankie Sue Del Papa,* Attorney General, Carson City; *Scott Doyle,* District Attorney, and *Michael P. Gibbons,* Chief Deputy District Attorney, Douglas County, for Respondent.

## OPINION

By the Court, ROSE, C. J.:

Appellant Alejandro Jose Castillo (Castillo) was one month shy of his sixteenth birthday when he committed six offenses, each of which would have been a felony if committed by an adult.[1] He was charged after he turned sixteen and was certified to stand trial as an adult pursuant to NRS 62.080. Castillo then fled the state before he could be tried or sentenced. He was arrested two years later in Florida and pleaded guilty to sexual assault, battery with intent to commit sexual assault, and felony failure to appear. The district court sentenced Castillo to life with the possibility of parole for sexual assault, to run consecutively to a ten year sentence for battery with intent to commit sexual assault and concurrently with a six year sentence for failure to appear. Castillo argues on appeal that: (1) amended NRS 62.080, which prevents a juvenile from being certified as an adult unless he commits a crime after age sixteen, should retroactively apply to him, (2) his sentence is unconstitutional, (3) the district court relied on improper evidence at the sentencing hearing, and (4) NRS 62.080 violates the right to due process in failing to provide specific guidelines for the certification process. For the reasons stated below, we reject Castillo's contentions and affirm his conviction.

---

[1]We note that this is the fourth time Castillo's case has been before us for review. In State v. District Court, 105 Nev. 644, 781 P.2d 776 (1989), we held that certification of a minor to stand trial as an adult pursuant to NRS 62.080 required only that the State charge a minor after the age of sixteen, not that the minor commit the charged offense after the age of sixteen, and granted the State's petition for a writ of mandamus to bring a petition to certify Castillo. In Castillo v. State, 106 Nev. 349, 792 P.2d 1133 (1990), we held that the order of the district court denying Castillo's petition for transfer back to the juvenile court was not a final appealable order, but that the order of the juvenile court certifying Castillo as an adult was a final appealable order. On December 18, 1990, this court entered an order dismissing Castillo's appeal of the juvenile court's certification, finding no abuse of discretion by the juvenile court and no prosecutorial manipulation by the State in charging Castillo after he turned sixteen. Castillo v. State, Docket No. 20840 (Order Dismissing Appeal, December 18, 1990).

## FACTS

On the evening of May 4, 1988, Castillo entered Lynne's residence wearing a black ski mask and gloves. Lynne was sleeping in her bed along with her four-year-old son. Upon observing Lynne, Castillo began to assault her—grabbing her by the hair and slamming her head into the brass bedposts. He then tried to remove her sweat pants while pushing his knee into her chest and stomach. Lynne managed to scream and alert her roommate, and Castillo ran away.

On the evening of May 5, 1988, Castillo left his residence and hid near Debbie's home. Debbie was eighteen years old and had been out with a girlfriend. She dropped off her friend and then pulled into her garage and exited her car. Castillo emerged from the shadows and knocked Debbie to the ground. Debbie began screaming and Castillo began punching her in the face. Castillo then climbed on top of Debbie and grabbed her by the hair. He pounded her head into the cement floor so hard that she lost consciousness for a few minutes. Castillo pulled most of her clothing off and began forcible sexual intercourse. He withdrew his penis and ejaculated on her face. Castillo got up and kicked Debbie in the stomach before riding away on a stolen bicycle. Debbie ran into her house to get help from her parents. Her mouth was cut and swollen and her left eye was swollen shut. She was immediately transported to Carson-Tahoe Hospital.

Castillo was arrested on May 6, 1988, and charged with possession of stolen property—the bicycle used on May 5, 1988. Castillo entered an admission to a juvenile petition charging grand larceny and possession of stolen property and was granted probation. He turned sixteen years old on June 8, 1988. On July 18, 1988, the State filed a petition alleging delinquency with the juvenile court, charging Castillo with sexual assault, attempted sexual assault, two counts of battery with intent to commit sexual assault, and two counts of burglary. Castillo was arrested, placed into custody at the juvenile detention center in Carson City, and transferred to the Nevada Youth Training Center in Elko after he escaped from the Carson City facility.

On August 9, 1988, the State filed a motion pursuant to NRS 62.080 to certify Castillo to be tried as an adult. The juvenile judge denied the State's motion, and subsequently this court issued a writ of mandamus reinstating the State's petition for certification. *See* State v. District Court, 105 Nev. 644, 781 P.2d 776 (1989). In response to our decision, on May 13, 1991, the Nevada Legislature amended NRS 62.080 to state that "no child may be [certified as an adult] unless he was 16 years of age or older at the time he allegedly committed the offense charged." NRS 62.080(1).

Meanwhile, pursuant to our grant of the State's petition for writ of mandamus, the district court considered the State's petition and certified Castillo to stand trial as an adult. Castillo appealed to this court, futilely attempting to transfer his case back to juvenile court. *See* Castillo v. State, 106 Nev. 349, 792 P.2d 1133 (1990). At his arraignment on April 10, 1990, Castillo declined to enter a plea, and the district court entered a not guilty plea to all charges. While Castillo's second appeal was pending, the State filed a motion for bail increase. Castillo failed to appear for the hearing, and a bench warrant was issued for his arrest. Castillo subsequently failed to appear for the jury trial that was scheduled for June, 1990, and continued until September, 1990.

Castillo was finally arrested in Florida in September, 1992, as a result of illegal activities. Between June, 1990, and September, 1992, Castillo obtained a Florida identification card and driver's license in the name of Luis Ortiz, received six traffic citations while using the name Luis Ortiz, and had his driver's license suspended indefinitely for failure to pay fines. Castillo was arrested for disorderly conduct, trespassing, and burglary, resulting in two misdemeanor convictions. Castillo's burglary arrest involved Castillo approaching a woman from behind and telling her she had gum stuck to her shoe, then bending down, removing the victim's shoe, and licking and kissing her foot and toes. The victim grabbed her shoe and ran into a business, and Castillo was subsequently observed burglarizing the victim's vehicle.

On April 1, 1993, pursuant to a plea bargain in which four of the original felony charges were dismissed, Castillo entered a guilty plea to two charges—one for sexual assault on Debbie and one for battery with intent to commit sexual assault on Lynne. He also pleaded guilty to the felony charge of failure to appear that was filed against him on February 2, 1993. The district court imposed the maximum sentence for each offense. Castillo appeals from this sentence.

## DISCUSSION

*Whether amended NRS 62.080 should apply retroactively*

Prior to 1991, NRS 62.080 provided:

> If a child 16 years of age or older is charged with an offense which would be a felony if committed by an adult, the juvenile division of the district court, after full investigation, may in its discretion retain jurisdiction or certify the child for proper criminal proceedings to any court which would have trial jurisdiction of such offense if committed by an adult; but no child under 16 years of age may be so certified.

In 1991, the Nevada Legislature amended NRS 62.080 to state: "[n]o child may be [certified as an adult] unless he was 16 years of age or older at the time he allegedly committed the offense charged." 1991 Nev. Stat., ch. 160, sec. 11, pp. 304-05. Castillo asserts that the district court erred in failing to apply amended NRS 62.080 to his case. Because Castillo committed the crimes one month shy of his sixteen birthday, retroactive application of NRS 62.080(1) would result in a finding that the district court lacked jurisdiction to try Castillo as an adult.

In Nevada and neighboring jurisdictions, changes in statutes are presumed to operate prospectively absent clear legislative intent to apply a statute retroactively. Allstate Insurance Co. v. Furgeson, 104 Nev. 772, 776, 766 P.2d 904, 907 (1988); Walstrom v. State, 104 Nev. 51, 53 n.3, 752 P.2d 225, 227 n.3 (1988); *accord* White v. Western Title Co., 710 P.2d 309, 316 (Cal. 1990); Riley v. People, 828 P.2d 254, 257 (Colo. 1992).

There is no indication that the Legislature intended that amended NRS 62.080 apply retroactively. The amendment was a small part of an omnibus crime bill that was not debated because all parties were in agreement. Though the law was passed in May, 1991, it did not become effective until October 1, 1991. The only indication of legislative intent with regard to the amendment is found in the minutes of the Assembly Judiciary Committee, which state:

> Section 11 dealt with juvenile-adult jurisdiction. The Nevada Supreme Court case of *State of Nevada v. District Court* in November, 1989 resulted in confusion in the law on this issue. . . . Mr. Picker opined the legislature intended if the crime was committed by a person who was 16 at the time of the crime, then he qualified for adult adjudication upon a motion of the district attorney. Section 11 would clarify the statute toward that intent.

Hearing on A.B. 383 Before the Assembly Judiciary Committee, March 20, 1991, p. 4. As the above-quoted passage shows, the Legislature, as a result of this court's opinion in State v. District Court, 105 Nev. 644, 781 P.2d 776 (1989), was well aware of Castillo's case at the time that it amended the statute. If the Legislature was concerned with Castillo or others in his situation and intended the statute to apply retroactively, they could have so directed. Nowhere in the legislative history dose the Legislature indicate an intent that the amendment apply retroactively.

Appellant argues that because NRS 62.080 is a statute which is both procedural and remedial, it should apply retroactively despite such lack of legislative intent. *See* Harrison v. Otis Elevator Co., 935 F.2d 714, 719 (5th Cir. 1991) (stating that procedural acts describe methods for enforcing, processing, administering or determining rights or liabilities, and holding that "[i]t is well settled that legislation that is interpretive, procedural, or remedial must be applied retroactively, while substantive amendments are given only prospective application"); *see also* Wash. Nat. Ins. v. Sherwood Assoc., 795 P.2d 665, 669 n.9 (Utah Ct. App. 1991) (a "remedial" statute in the context of a retroactivity determination means a statutory change in the judicial procedure available to pursue a claim, and a clarification of prior legislative intent).

We reject appellant's contention for the following reasons. First, we note that the majority of state courts do not mandate that such statutes be applied retroactively, but instead leave the determination to the court's discretion. *See* Texas County Irr. and Water Resources Ass'n v. Oklahoma Water Resources Board, 803 P.2d 1119 (Okla. 1992) (a "clarifying amendment" *can* be given retrospective application if it does not affect vested rights); In re F.D. Processing, Inc., 832 P.2d 1303, 1307 (Wash. Ct. App. 1993) (amendments *may* be retroactively applied if they are remedial in nature and do not affect substantive rights).

Second, in analogous situations, this court has ruled that changes in criminal procedure based upon judicial decisions were to be applied prospectively, not retroactively. *See* Gier v. Ninth Judicial District Court, 106 Nev. 208, 789 P.2d 1245 (1990); Heinrich v. State, 97 Nev. 358, 630 P.2d 1224 (1981). The changes in law in *Gier* and *Heinrich* involved changes in the grand jury and guilty plea process. Since such changes were procedural and were not of constitutional dimension, we concluded that they were not to be applied retroactively. Similarly, the change in NRS 62.080 is an important procedural change, but is not of constitutional dimension and need not be applied retroactively.

Third, an amendment is considered remedial only if it clarifies or technically corrects an ambiguous statute. *In re F.D. Processing, Inc.,* 832 P.2d at 1308. The legislative minutes reveal that the Legislature amended NRS 62.080 to "clarify" the "confusion" caused by the decision of State v. District Court, 105 Nev. 644, 781 P.2d 776 (1989). However, despite language in the legislative history indicating that the Legislature intended to

"clarify" their original intent, courts have held that legislative enactments responding to judicial interpretations of a statute by affirmatively changing the statute are not "clarifications" of original legislative intent, but are *amendments* presumed to operate prospectively absent contrary legislative intent. *See* Marine Power v. Washington State Hum. Rights, 694 P.2d 697, 701 (Wash. Ct. App. 1985). Such decisions are based on the fact that after the supreme court of a state has interpreted the statute in question, it is no longer ambiguous and therefore cannot be clarified by the Legislature. *Id.* Therefore, absent clear legislative intent to the contrary, clarifying amendments will be applied retrospectively only if they do not contravene any judicial construction of the statute. *F.D. Processing,* 832 P.2d at 1308; *Marine Power,* 694 P.2d at 700 (legislative clarification, as opposed to a legislative amendment, is generally retroactive, but a legislature may not overrule by legislative enactment a prior authoritative supreme court opinion construing a statute: such a result would make the legislature a "court of last resort").

Lastly, since Castillo was scheduled for trial in 1990 and failed to appear when he fled to Florida, he is asking this court to consider arguments that would not have been available to him had he complied with the law. Allowing Castillo benefit from his intentional, illegal absence from the State goes against common notions of fairness and justice. In a similar case, the Supreme Court of Minnesota refused to allow such a benefit to a seventeen year old charged with homicide in the juvenile court. *See* In the Matter of Welfare of S.V., 296 N.W.2d 404 (Minn. 1980). The juvenile left the state, moved to Texas, and was not arrested until after he turned twenty-one. The court rejected the appellant's contention that because he was over twenty-one and the juvenile court lacked jurisdiction, he could not be prosecuted for his crime. *Id.* at 407. Refusing to accept this "home free" argument allowing the offender to benefit from his illegal flight, the court ruled that the adult court *automatically* obtained jurisdiction. *Id.* at 407-08. We likewise refuse to allow Castillo to illegally flee the state and come back yelling "home free" now that NRS 62.080 has been amended.

Thus, we conclude that the district court did not err in failing to apply NRS 62.080 retroactively to Castillo.

*Whether Castillo's sentence is constitutional*

Castillo claims that his sentence constitutes cruel and unusual punishment, in violation of the Eighth Amendment. *See* Solem v. Helm, 463 U.S 277 (1983) (criminal sentences disproportionate

to the crime committed violate the Eighth Amendment). He argues that because he was not a "true adult" when he committed the offenses, did not use a deadly weapon, did not cause *"substantial* bodily harm" to either victim, and did not engage in "something more deviant than forcible rape," this court should find his sentence unconstitutional. He further maintains that he was an "immature and impulsive" juvenile when he committed these acts and that examination by two competent psychologists four years apart have failed to turn up any serious personality disorders. Lastly, he asserts that the "uncontroverted evidence" that he had been ingesting anabolic steroids at the time of the attacks, "in connection with his desires to be a star football player for the Douglas High Tigers," should mitigate his punishment.[2] We conclude that Castillo's arguments are without merit for the following reasons.

First, we note that the written plea bargain signed by Castillo, pursuant to which four other felony charges were dismissed, stated that he could be given the maximum sentence for each offense.

Second, the minimum time to be served for sexual assault on a life sentence or on a definite term of years is the same, five years. *See* NRS 200.366(2)(b). Therefore, it is possible that even though Castillo was given a life sentence, he could be paroled at the same time he would have if given a lesser sentence.[3]

---

[2] We note that the evidence of steroid ingestion and its relation to the crimes committed is anything but "uncontroverted." Castillo has maintained throughout this case that he was just a "crazy kid on steroids" when he committed the crimes. At the sentencing hearing, John Warren (Warren), a pharmacist, testified on Castillo's behalf. He stated that there *may* be a cause and effect relationship between the taking of anabolic steroids and violent crimes, but admitted on cross-examination that less than one percent of the reported number of people who admitted to taking anabolic steroids become violent. Warren also admitted that he did not know if Castillo had actually ingested anabolic steroids because he did not interview Castillo. Instead, Warren relied on the representation of Castillo's attorney, who told Warren that Castillo's brother had said that he gave Castillo steroids and that Castillo had told his brother that he took the steroids during the time period of the crimes. Warren additionally testified that no study indicates that steriods would cause somebody to commit sexual assault.

[3] At the sentencing hearing, Castillo's counsel argued that a twenty-five year sentence would be appropriate, acknowledging that such a sentence would probably mean that Castillo would serve five years then be paroled because he has already been evaluated by two psychologists who say that he does not have an identifiable personality disorder characteristic of chronic sex offenders. In briefs before this court, Castillo's counsel stated that under Castillo's current sentence, even if he is a model prisoner, the grant of parole

Third, the trial court has wide discretion in imposing a sentence, and unless there is a showing of abuse of discretion, the sentence will be upheld. Randell v. State, 109 Nev. 5, 846 P.2d 278 (1993); *see* Deveroux v. State, 96 Nev. 388, 390, 610 P.2d 722, 723-24 (1980) (a judge has discretion in deciding what weight to accord to youth and lack of a prior criminal record in sentencing). If a sentence is within the statutory limits, it will not be considered cruel and unusual punishment unless it is so disproportionate to the crime that it shocks the conscience and offends fundamental notions of human dignity. Lloyd v. State, 94 Nev. 167, 170, 576 P.2d 740, 743 (1978).

The evidence in the record shows that Castillo committed premeditated, brutal crimes. Castillo's escape from the juvenile detention center and flight to Florida, where he committed further crimes and an act of sexual deviancy, show not only an attempt to avoid responsibility, but also a flagrant disregard for the law. Castillo's cries for mitigation based on claims that he was immature when he committed the crimes, that he did not engage in "something more deviant than forcible rape," and that he was taking steriods in order to be a star football player, are further attempts to avoid taking responsibility for what are serious, adult offenses meriting adult punishment.[4] We support the current trend that juvenile offenders who commit serious violent crimes should be prosecuted as adults, and we thus conclude that Castillo's sentence is constitutional.

*Whether the district court relied on improper evidence in sentencing appellant*

At the sentencing hearing, Debbie and Lynne chose not to testify. The district court, however, ruled that it could consider a letter submitted by Lynne's ex-husband describing the impact of

---

before his thirtieth birthday is slim. Even if this statement is true, in light of the psychiatric evaluations, Castillo will most likely end up serving no more than ten years before becoming eligible for parole. *See* NRS 200.375. Thus, Castillo's assertion that his sentence is unconstitutional is an argument over approximately five years of imprisonment.

The State has argued that a life sentence is necessary to assure the imposition of lifetime parole, crucial to maintaining supervision of Castillo, and that the severity of the crimes and Castillo's subsequent criminal behavior justifies consecutive maximum sentences.

[4]We question why the Legislature, given the rise in serious violent crimes committed by youthful offenders, has not seen fit to provide for certification of juveniles under sixteen who commit such crimes. We ask the Legislature to review this statute at the next legislative session.

the crime on Lynne and Lynne's son and a letter sent by Debbie's parents describing the impact of the crime on Debbie. Castillo argues that the district court's consideration of these victim impact statements was clear error.

Though a judge is allowed wide discretion in sentencing, if the judge relies upon prejudicial matters, such reliance constitutes an abuse of discretion that necessitates a resentencing hearing before a different judge. Goodson v. State, 98 Nev. 493, 495-96, 654 P.2d 1006, 1007 (1982).

NRS 176.015(3)(b) provides a victim the opportunity to appear personally or by counsel and reasonably express any views concerning the crime, the person responsible, and the impact of the crime on the victim. NRS 176.015(5) states that the term "victim" has the meaning ascribed to it in NRS 213.005.[5]

Castillo argues that Ron, Lynne's ex-husband, does not fit any part of the definition of victim and that his statement should not have been considered. The plea bargain agreement stated, however, that the court could consider the facts surrounding all of the original charges at the time of sentencing. The district court, reasoning that Lynne's son was a victim of the burglary with which Castillo was originally charged, concluded that Ron could speak on his son's behalf. Though Ron does not fit into any description within the meaning of victim that would enable him to give a statement for Lynne, it is not clear, since the focus of the discussion was on the statements regarding Lynne's son, that the district court even considered Ron's statements regarding Lynne. Even if it did, we conclude that such consideration was harmless error.

Additionally, we conclude that though Debbie's parents do not fit within the express wording of NRS 213.005, their letter was directly related to the impact that the crime had on Debbie. Therefore, the district court's consideration of this letter was harmless error.

*Whether NRS 62.080 violates constitutional due process requirements in failing to provide sufficient guidelines*

Appellant argues that NRS 62.080 is unconstitutional in failing to announce the criteria to be employed in certifying juvenile felony offenders as adults.

---

[5]NRS 213.005 defines "victim" as either a person against whom a crime has been committed, a person who has been injured or killed as a direct result of the commission of a crime, or the surviving spouse, parents, or children of such a person.

The due process clause of the Fourteenth Amendment requires the states to enact standards for those who apply the laws, in order to avoid arbitrary and discriminatory enforcement. Sheriff v. Martin, 99 Nev. 336, 339, 662 P.2d 634, 637 (1983). However, statutes are presumed valid, and the burden is on the person challenging the statute to prove it is unconstitutional. Wilmeth v. State, 96 Nev. 403, 610 P.2d 735 (1980). There must be a "clear showing of invalidity" to overcome such a burden. Sheriff v. Martin, 99 Nev. 336, 340, 662 P.2d 634, 637 (1983).

Appellant relies largely on United States ex rel. Pedrossa v. Sielef, 434 F. Supp. 493 (N.D. Ill. 1977), *modified on other grounds,* 598 F.2d 1064 (7th Cir. 1979), a case in which an Illinois court faced a vagueness challenge to a similar transfer statute. The court found that the statute was unconstitutional, stating:

> Neither was the vagueness in the statute removed by any Illinois decisions construing the statute to require criteria for the transfer decision. Nothing prevented the Illinois juvenile judge from using any criteria he desired no matter how arbitrary. This potential for arbitrariness was aggravated by the absence of provisions requiring a statement of reasons for the transfer (the judge in this case gave no reasons), or allowing appellate review of the transfer decision.

*Id.* at 496.

We note, however, that *Pedrossa* is not persuasive for the following reasons. In the case of In the Matter of Seven Minors, 99 Nev. 427, 434-36, 664 P.2d 947, 952 (1983), we created criteria for courts to consider in certifying juveniles for transfer to adult court. After establishing public protection as the controlling principle upon which the transfer decision is to be based, we held that a court should consider the nature and seriousness of the charged offense, the persistency and seriousness of the adjudicated or admitted past criminal offenses, and the personal attributes or admitted past criminal offenses, and the personal attributes of the offender. *Id.* Thus, judges are *not* free to use arbitrary criteria in the certification process. Moreover, in Castillo v. State, 106 Nev. 349, 792 P.2d 1133 (1990), this court held that an order certifying a juvenile for transfer to district court is an appealable order, so that review of a transfer decision is possible. Therefore, the concerns expressed by the *Pedrossa* court are not present in Nevada.

Additionally, this court has stated:

Where the intention of the Legislature is clear, it is the duty of the court to give effect to such intention and to construe the language of the statute so as to give it force and not nullify its manifest purpose.

Woofter v. O'Donnell, 91 Nev. 757, 762, 542 P.2d 1396, 1400 (1975). When a former statute is amended, or a doubtful interpretation rendered certain by subsequent legislation, such amendment is persuasive evidence of legislative intent with regard to the statute. *Id.* The decisional matrix announced by this court in *Seven Minors* had been in place for the eight years leading up to the amendment of NRS 62.080 in 1991. If the Legislature had intended guidelines other than those set out by this court in *Seven Minors,* they could have amended the statute to provide such guidelines, just as they amended the statute to provide that juveniles under sixteen who commit crimes cannot be certified after this court's decision in State v. District Court, 105 Nev. 644, 781 P.2d 776 (1989). Thus, we conclude that Castillo has not met the burden of proving that NRS 62.080 is unconstitutional.

Accordingly, we affirm Castillo's conviction.

STEFFEN, YOUNG and SHEARING, JJ., concur.

SPRINGER, J., concurring:

In my opinion, the legislature's 1991 amendment to NRS 62.080 was merely a clarification of the meaning of the statute made necessary by our incorrect interpretation of the statute in State v. District Court, 105 Nev. 644, 781 P.2d 776 (1989). In that case we ruled that the statute relating to certification of a "child 16 years of age or older" to be prosecuted in adult criminal proceedings allowed the state to prosecute as adults children who commit felonies prior to their sixteenth birthday. Under this ruling the state could simply wait until an accused child reached the age of "16 years of age or older," and then proceed to pursue adult prosecution against a child who committed an offense while he or she was still under sixteen years of age. As I said in my Dissent in State v. District Court, 105 Nev. 644, 781 P.2d 776 (1989), the statute provides for certification to the adult court only those underaged persons who commit crimes *after* they have reached their sixteenth birthday. It makes no sense to me that a child of thirteen or fourteen who commits a felony offense would not be subject to adult prosecution, but would become subject to criminal prosecution after he or she reaches the age of sixteen. The legislature has, rightly or wrongly, drawn the line at sixteen; and the state should not be allowed to override this

policy simply by waiting for the offender to reach his or her sixteenth birthday. I continue to believe that Castillo's certification was improper and see the legislature's amendment of the statute as merely a clarification of this point. However, this court's prior decision in *State v. District Court* is now the law of the case in this matter and is binding upon this court in the present proceedings. *See, e.g.*, Andolino v. State of Nevada, 99 Nev. 346, 662 P.2d 631 (1983) (once an issue has been determined in a previous appeal on the same facts it is binding in all subsequent proceedings). On the more narrow question presented by Castillo's appeal, whether the amended version of NRS 62.080 ought to be applied retroactively, I concur in the Majority's reasoning. For these reasons, I concur in the judgment affirming the conviction.