OPINION
 

 Per Curiam:
 

 In this original petition for a writ of mandamus, we decide whether ameliorative amendments to the deadly weapon enhancement statute (NRS 193.165) apply to offenders who committed their crimes prior to the effective date of the amendments but were sentenced after that date. We conclude that they do not. We further reaffirm the general rule that crimes are punishable in accord with the law in force at the time a defendant commits his crime unless the Legislature clearly expresses its intent to the contrary. We conclude that legislative intent, this court’s jurisprudence, and sound public policy reasons militate in favor of such a result. Moreover, we conclude that this rule should apply even in the absence of a savings clause.
 
 [2]
 
 Further, we reject Pullin’s contention that the retroactive application of the amendments to NRS 193.165 is appropriate here because NRS 193.165 is a procedural or remedial statute. Finally, we conclude that the general rule concerning the retroactive application of changes in criminal law applies equally to both primary offenses and sentence enhancements. Accordingly, we grant the petition and direct the district court to enter an amended judgment of conviction that comports with this decision.
 

 FACTS AND PROCEDURAL HISTORY
 

 On September 2, 2006, Pullin used a firearm to murder Laurie Jean Lawrence. Subsequently, Pullin pleaded guilty to that offense and the district court set the matter for sentencing. Prior to Pullin’s sentencing hearing on September 28, 2007, the Legislature enacted
 
 *566
 
 A.B. 510 and altered the sentencing scheme in NRS 193.165 for the deadly weapon enhancement. Prior to sentencing, the parties submitted arguments concerning the application of these newly enacted amendments in the instant case. At the sentencing hearing, the district court heard arguments on the matter and determined that Pullin should be sentenced pursuant to the amendments. The district court then orally imposed a sentence of life without the possibility of parole for first-degree murder with a consecutive sentence of 8 to 20 years for the deadly weapon enhancement. On that same day, the district court entered a judgment of conviction but altered the sentence for the deadly weapon enhancement from the oral pronouncement of 8 to 20 years to a term of 8 to 12 years. The State then filed the instant petition.
 

 DISCUSSION
 

 “This court may issue a writ of mandamus to compel the performance of an act which the law requires as a duty resulting from an office or where discretion has been manifestly abused or exercised arbitrarily or capriciously.”
 
 [3]
 
 The writ will issue where the petitioner has no “plain, speedy and adequate remedy in the ordinary course of law.’
 
 [4]
 
 The decision to entertain a mandamus petition lies within the discretion of this court, and this court considers whether ‘ ‘judicial economy and sound judicial administration militate for or against issuing the writ.”
 
 [5]
 
 “Additionally, this court may exercise its discretion to grant mandamus relief where an important issue of law requires clarification.”
 
 [6]
 
 We conclude that writ review is appropriate here because the State does not have the right to appeal from a final judgment of conviction. Further, we conclude that the instant petition presents important issues of law requiring clarification. Therefore, we exercise our discretion to intervene by way of extraordinary writ and address the merits of the petition.
 

 The ameliorative amendments to NRS 193.165
 

 On June 14, 2007, the Legislature enacted A.B. 510,
 
 [7]
 
 which amended several statutes, including NRS 193.165. Specifically,
 
 *567
 
 A.B. 510 amended NRS 193.165 to give district court judges broader discretion in determining sentences for violations of that statute by allowing them to impose a consecutive sentence with a minimum term of not less than one year and a maximum term of not more than 20 years.
 
 [8]
 
 Prior to these amendments, NRS 193.165 mandated that a defendant serve an equal and consecutive sentence for the use of a deadly weapon in the commission of the primary offense.
 
 [9]
 
 Significantly, the Legislature listed the effective date of the amendment as July 1, 2007, but failed to indicate whether the amendment would apply retroactively.
 
 [10]
 
 A review of the legislative history similarly reveals no indication that the Legislature intended the amendments to apply retroactively. Rather, it reveals that the issue of retroactivity was only briefly mentioned once during the entirety of the legislative history.
 
 [11]
 

 Relying on this court’s previous decisions in
 
 Tellis v. State
 

 [12]
 

 and
 
 Sparkman v.
 
 State,
 
 [13]
 
 the State persuasively argues that because the Legislature expressed no intent to apply the amendments retroactively, the district court erred when it sentenced Pullin under the amended sentencing scheme rather than the one in effect when Pullin committed the offense. We agree with the State’s contention and now take this opportunity to reaffirm that unless the Legislature clearly expresses its intent to apply a law retroactively, Nevada law requires the application of the law in effect at the time of the commission of a crime. We further conclude that legislative intent, this court’s jurisprudence, and public policy considerations require this rule to apply even in the absence of a savings clause.
 

 Legislative intent and the retroactivity of ameliorative criminal statutes in Nevada
 

 It is well established that under Nevada law, the proper penalty is the penalty in effect at the time of the commission of the offense and not the penalty in effect at the time of sentencing. Both the Legislature and this court have repeatedly evinced their commitment to this sound principle. Three examples of the Legislature’s intent in this regard are the savings clause set forth in the Crimes and Punishments Act of 1911;
 
 [14]
 
 the general savings statutes adopted
 
 *568
 
 in 1967 as NRS 193.130,
 
 [15]
 
 193.140,
 
 [16]
 
 and 193.150;
 
 [17]
 
 and the savings statute adopted in 1971 as NRS 193.075.
 
 [18]
 
 These statutes indicate a strong legislative intent that the law in effect at the time of the commission of a crime governs the prosecution of criminal offenses.
 

 Preliminarily, we acknowledge that the Legislature amended the general savings clause for felonies (NRS 193.130) in 1995, as part of a movement towards “truth in sentencing”
 
 [19]
 
 and in so doing included language that could be read to remove all category A felonies, as well as felonies where the applicable sentence is set forth elsewhere by specific statute, from the purview of NRS 193.130. NRS 193.130(1) now provides,
 

 Except when a person is convicted of a category A felony, and except as otherwise provided by specific statute,
 
 a person convicted of a felony shall be sentenced to a minimum term and a maximum term of imprisonment which must be within the limits prescribed by the applicable statute, unless the statute in force at the time of commission of the felony prescribed a different penalty.
 

 (Emphasis added.) While we recognize that the emphasized language appears to remove certain felonies from the purview of the general savings clause set forth in NRS 193.130, we nevertheless conclude that the general rule concerning retroactivity should apply to all criminally prohibited conduct because, as discussed above, such a result coheres with the Legislature’s overall criminal statutory scheme, which has consistently favored such a rule.
 
 [20]
 
 We conclude that it would be incongruous to apply the general rule to the felonies not excluded under NRS 193.130, to all gross misdemeanors under NRS 193.140, and to all misdemeanors under NRS 193.150, but to exclude category A felonies, felonies where another specific statute sets forth the punishment, and sentence enhancements. There is simply no rational basis for applying the general rule in such a piecemeal fashion. Moreover, we conclude that this result is consonant with this court’s prior jurisprudence, which we will now examine.
 

 
 *569
 

 Statutory retroactivity under Nevada caselaw
 

 Beginning with
 
 Tellis v. State,
 

 [21]
 

 this court has repeatedly indicated its approval of the general rule set forth above. In that case, Tellis argued that because the Legislature had failed to enact a specific savings clause when it amended the statute in question, the court was “obligated to construe the statute strictly and give him the benefit of the sentence in effect at the time he was convicted and sentenced, notwithstanding the statute carrying a more severe penalty was in force at the time of his arrest.”
 
 [22]
 
 We held that the general savings clause set forth in NRS 193.130 prohibited Tellis from being sentenced under ameliorative amendments enacted after he committed his crime. In rejecting this claim, this court determined that it was appropriate to sentence Tellis in accord with the statute in force at the time he committed his crime because the Legislature had enacted a general savings clause, NRS 193.130, which mandated that result.
 
 [23]
 
 The court concluded that because there was a savings clause in effect at the time the district court sentenced Tellis, the district court had appropriately imposed the sentence in force at the time Tellis committed his crime.
 
 [24]
 

 This court revisited the issue of whether ameliorative statutes applied retroactively in
 
 Sparkman
 
 v.
 
 State.
 

 [25]
 

 In that case, Sparkman challenged a judgment of conviction sentencing him to two terms of life imprisonment — the prescribed sentence in effect at the time Sparkman committed his offense — by arguing that he should be sentenced under a new ameliorative sentencing scheme.
 
 [26]
 
 This court unequivocally stated that ‘ ‘the general rule is that the proper penalty is that in effect at the time of the commission of the offense” unless the Legislature demonstrates clear legislative intent to apply a criminal statute retroactively.
 
 [27]
 
 Notwithstanding the general rule, this court concluded that the district court erred in sentencing Sparkman because the newly enacted amendment Spark-man sought to have applied in his favor specifically indicated that it would apply retroactively.
 
 [28]
 

 This court reiterated the principle that the Legislature must demonstrate its clear intent to apply a statute retroactively in
 
 *570
 

 Castillo
 
 v.
 
 State.
 

 [29]
 

 In
 
 Castillo,
 
 this court declined to apply retroactively amendments to NRS 62.080, which made it illegal to certify a minor as an adult unless he was 16 years of age or older when he committed his crime instead of applying the previous version of the statute, which merely required the minor to be 16 years old at the time of his certification as an adult.
 
 [30]
 
 In declining to apply the amendments retroactively, this court noted that “[i]n Nevada and neighboring jurisdictions, changes in statutes are presumed to operate prospectively absent clear legislative intent to apply a statute retroactively.”
 
 [31]
 
 These cases demonstrate this court’s continued adherence to the general rule. Next, we turn to the important public policy considerations that favor the continued application of the general rule set forth in the cases discussed above.
 

 Public policy considerations
 

 In its petition, the State argues that the retroactive application of criminal statutes violates important public policy considerations. In this, the State argues that a rule that allows sentencing in accord with the law in effect at the time that a defendant is sentenced violates public policy because it would allow criminals who decide to flee the jurisdiction or who simply fail to appear in court to benefit from ameliorative sentencing amendments. We agree with the State and therefore reject Pullin’s contention that the amendments to NRS 193.165 should be applied retroactively because no public policy warrants the application of a stricter sentencing law when the Legislature has seen fit to amend the law to provide for a lesser sentence.
 

 We conclude instead that it is irrational to have a sentencing scheme whereby defendants could benefit by manipulating the date of their sentencing hearings or by becoming fugitives from justice. Problematically, under Pullin’s suggested sentencing scheme, two codefendants, charged with the commission of the same crime, could be sentenced differently based upon the time that each one is sentenced. In such a situation, one codefendant could come forward, confess to the crime, plead guilty, and be sentenced, while his cohort remained a fugitive from justice. Unless the general rule applied, the fugitive would be eligible to receive the benefit of any ameliorative changes in the applicable sentencing scheme. We conclude that this is an illogical and unjust result. As this court previously concluded in
 
 Castillo,
 

 [32]
 

 such
 
 a result offends traditional notions of fairness and justice. As the Supreme Court of Kansas
 
 *571
 
 wisely opined, the “rale that the penalty parameters for an offense are fixed as of the date of the commission of the offense is fair, logical, and easy to apply. Neither the State nor a defendant may maneuver a sentencing date to take advantage of or avoid a change in a statute.”
 
 [33]
 
 We agree and now reiterate that ameliorative amendments to criminal statutes will not apply retroactively in the absence of legislative intent to the contrary.
 

 Retroactive application of procedural statutes
 

 Relying on
 
 People
 
 v.
 
 Miller,
 

 [34]
 

 a Michigan Court of Appeals case, Pullin further argues that this court should decline to apply the general rule because statutes that are remedial or procedural in nature may be applied retroactively. We disagree. In
 
 Castillo,
 
 this court addressed whether it would apply procedural or remedial statutes retroactively and rejected the argument that such statutes should apply retroactively despite the lack of legislative intent to apply the statute in that manner.
 
 [35]
 
 Preliminarily, this court observed ‘ ‘that the majority of state courts do not mandate that such statutes be applied retroactively, but instead leave the determination to the court’s discretion.”
 
 [36]
 
 This court went on to reject Castillo’s contention, observing that it had previously refused to apply procedural rules retrospectively unless such rules were of constitutional dimension.
 
 [37]
 

 Here, the amendments made to NRS 193.165 were not of constitutional dimension. The amendments did not alter any of the constitutional aspects of NRS 193.165, such as the requirement that a jury must find or a defendant must admit to the fact that a deadly weapon was used in the commission of a crime.
 
 [38]
 
 Instead, the amendments merely give the district court more discretion in determining the sentence. Thus, we decline to apply these amendments retroactively.
 

 The applicability of the general rule to sentence enhancements
 

 Further, we reject Pullin’s contention that the general rule set forth above is inapplicable here because the instant case involves a sentence enhancement while this court’s previous cases dealt with changes in the sentencing scheme for primary offenses. In this, Pullin suggests that the sentence enhancement should be treated differently because the enhancement does not create a separate
 
 *572
 
 offense but rather provides an additional penalty for the primary offense. Pullin further argues that because an enhancement cannot exist until a defendant is convicted of an underlying felony, the time of the enhancement is the time of the conviction. Pullin argues that this is especially the case in the context of a guilty plea because the facts supporting sentencing under the enhancement are not found until the sentencing hearing.
 

 We find this argument wholly unpersuasive. The mere fact that NRS 193.165 does not create a separate offense does nothing to alter the fact that the deadly weapon enhancement is an additional punishment for using a deadly weapon in the commission of the primary offense. A defendant’s use of a deadly weapon occurs at the time he commits the crime. Thus, we conclude that the penalty for the use of a deadly weapon should be the one in effect at the time the defendant used a weapon to commit the primary offense precisely because that is when the wrongdoing supporting the enhancement occurred.
 

 CONCLUSION
 

 We conclude that crimes are punishable in accord with the law in force at the time a crime is committed unless the Legislature clearly expresses its intent to the contrary. For that reason, the district court erroneously sentenced Pullin pursuant to the amended provisions of NRS 193.165, which were not in effect at the time he committed the instant offense. Accordingly, we instruct the district court to sentence Pullin in accord with the law in effect at the time he committed the instant offense.
 

 For the reasons stated above, we grant the instant petition. The clerk of this court shall issue a writ of mandamus instructing the district court to conduct a new sentencing hearing consistent with this opinion.
 

 [2]
 

 In
 
 Holiday
 
 v.
 
 United States,
 
 the District of Columbia Court of Appeals defined savings clauses as special provisions enacted in order to save prosecutions in cases where criminal statutes were repealed, thereby making the activity at issue legal. 683 A.2d 61, 66-67 (D.C. 1996). The court further explained that legislatures began adopting general savings statutes that are applicable to all changes in criminal liabilities, signaling a shift in the “legislative presumption from one of abatement unless otherwise specified to one of non-abatement in the absence of contrary legislative direction.”
 
 Id.
 
 (internal quotation and citation omitted).
 

 [3]
 

 Redeker v. Dist. Ct.,
 
 122 Nev. 164, 167, 127 P.3d 520, 522 (2006);
 
 see also
 
 NRS 34.160.
 

 [4]
 

 NRS 34.170;
 
 Redeker,
 
 122 Nev. at 167, 127 P.3d at 522.
 

 [5]
 

 Redeker,
 
 122 Nev. at 167, 127 P.3d at 522.
 

 [6]
 

 Id.
 

 [7]
 

 These amendments were initially set forth in A.B. 63, which did not pass in the State Senate; instead, A.B. 63 was included in A.B, 510 as section 13.
 
 See
 
 Hearing on A.B. 63 Before the Senate Comm, on the Judiciary, 74th Leg. (Nev., May 28, 2007).
 

 [8]
 

 See
 
 Hearing on A.B. 63 Before the Assembly Comm, on the Judiciary, 74th Leg. (Nev., March 9, 2007);
 
 see also
 
 Hearing on A.B. 63 Before the Senate Comm, on the Judiciary, 74th Leg. (Nev., May 28, 2007).
 

 [9]
 

 1995 Nev. Stat., ch. 455, § 1, at 1431.
 

 [10]
 

 2007 Nev. Stat., ch. 525, § 22, at 3196.
 

 [11]
 

 See
 
 Hearing on A.B. 510 Before the Senate Comm, on the Judiciary, 74th Leg. (Nev., May 28, 2007).
 

 [12]
 

 84 Nev. 587, 445 P.2d 938 (1968).
 

 [13]
 

 95 Nev. 76, 82, 590 P.2d 151, 155-56 (1979).
 

 [14]
 

 1912 Revised Laws of Nevada, Vol. 2, § 6296, at 1814.
 

 [15]
 

 1967 Nev. Stat., ch. 211, § 2, at 458 (adopting a savings statute as to felonies).
 

 [16]
 

 Id.
 
 § 3, at 459 (adopting a savings statute as to gross misdemeanors).
 

 [17]
 

 Id.
 
 § 4, at 459 (adopting a saving statute as to misdemeanors).
 

 [18]
 

 1971 Nev. Stat., ch. 84, § 1, at 144.
 

 [19]
 

 Hearings Before the Senate Subcomm. on Judiciary, 68th Leg. (Nev., March 1, 1995, and March 8, 1995).
 

 [20]
 

 For that same reason, we reject Pullin’s contention that the amendments to NRS 193.165 should apply retroactively because A.B. 510 did not contain a savings clause.
 

 [21]
 

 84 Nev. 587, 445 P.2d 938 (1968).
 

 [22]
 

 Id.
 
 at 591-92, 445 P.2d at 941.
 

 [23]
 

 Id.
 
 at 592, 445 P.2d at 941.
 

 [24]
 

 Id.
 

 [25]
 

 95 Nev. 76, 82, 590 P.2d 151, 156 (1979) (citing
 
 Tellis,
 
 84 Nev. 587, 445 P.2d 938).
 

 [26]
 

 Id.
 
 at 81-82, 590 P.2d at 155.
 

 [27]
 

 Id.
 
 at 82, 590 P.2d at 155-56 (citing
 
 Tellis,
 
 84 Nev. 587, 445 P.2d 938);
 
 see also Carter v.
 
 State, 95 Nev. 259, 592 P.2d 955 (1979).
 

 [28]
 

 Sparkman,
 
 95 Nev. at 82, 590 P.2d at 156.
 

 [29]
 

 110 Nev. 535, 542, 874 P.2d 1252, 1257 (1994),
 
 disapproved on other grounds by Wood v. State,
 
 111 Nev. 428, 430, 892 P.2d 944, 946 (1995).
 

 [30]
 

 Id. at 540, 874 P.2d at 1256.
 

 [31]
 

 Id.
 

 [32]
 

 Id. at 542, 874 P.2d at 1257.
 

 [33]
 

 State
 
 v.
 
 Sylva,
 
 804 P.2d 967, 969 (Kan. 1991).
 

 [34]
 

 453 N.W.2d 269 (Mich. Ct. App. 1990).
 

 [35]
 

 10 Nev. at 541, 874 P.2d at 1256.
 

 [36]
 

 Id.
 

 [37]
 

 Id.
 

 [38]
 

 See Apprendi
 
 v.
 
 New Jersey,
 
 530 U.S. 466, 486-87 (2000).