IN THE SUPREME COURT OF THE STATE OF NEVADA

WILLIAM RONALD CLARK,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 82996

FILED

JUN 17 2022

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
DEPUTY CLERK

## ORDER OF AFFIRMANCE
## AND REMAND TO CORRECT CLERICAL ERROR

This is an appeal from a judgment of conviction, pursuant to a jury verdict, of burglary and robbery.[1] Eighth Judicial District Court, Clark County; Linda Marie Bell and Jacqueline M. Bluth, Judges.

*Sufficiency of the evidence*

Appellant William Clark argues that insufficient evidence supports his burglary conviction because the State did not prove he had felonious intent when he entered the casino that he later robbed. When reviewing the sufficiency of the evidence supporting a criminal conviction, we consider "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also Origel-Candido v. State*, 114 Nev. 378, 381, 956 P.2d 1378, 1380 (1998).

At trial, the State presented evidence that Clark entered the casino and passed a note to a cashier that demanded she give him money. After the cashier told Clark that she could not read the note, Clark motioned

---

[1]Pursuant to NRAP 34(f)(1), we have determined that oral argument is not warranted.

22-19224

as if he had a weapon and threatened the cashier to give him the money so "nobody gets shot." The cashier then gave Clark about $4,700 from her drawer. The jury received photographic evidence from which the jury could infer that Clark wrote the robbery note before entering the casino. Forensic testing found Clark's DNA on a discarded sweatshirt that matched the victim's description of the perpetrator's clothing. The State also presented surveillance video showing Clark's movements outside and inside the casino. While Clark testified that he never entered the casino, it is the jury's prerogative to resolve conflicting evidence. *United States v. Hubbard*, 96 F.3d 1223, 1226 (9th Cir. 1996) (providing that a "reviewing court must respect the exclusive province of the fact finder to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts"); *cf. Fritz v. State*, 86 Nev. 655, 657, 474 P.2d 377, 378 (1970) (a jury may reject a defendant's explanation of why he is inside a building and "conclude that his entry into the establishment was with the intent to commit a felony"). Therefore, we conclude that the State presented sufficient evidence for a rational juror to find that Clark intended to rob the casino when he entered. *See* NRS 193.200; NRS 205.060(1); *Sharma v. State*, 118 Nev. 648, 659, 56 P.3d 868, 874 (2002) (observing that "intent can rarely be proven by direct evidence of a defendant's state of mind, but instead is inferred by the jury from the individualized, external circumstances of the crime, which are capable of proof at trial").

*Suppression of incriminating statements*

Clark argues that his incriminating statements should not have been admitted because a portion of his recorded statements violated NRS 179.500, and his confession was not voluntary. When considering challenges to the denial of a motion to suppress, "we review the district

(O) 1947A

court's legal conclusions de novo and its factual findings for clear error." *Lamb v. State*, 127 Nev. 26, 31, 251 P.3d 700, 703 (2011).

First, the admission of Clark's recorded statements did not violate NRS 179.500, which prohibits the admission of intercepted oral communications obtained without a court order.[2] The interviewing detectives took Clark outside to smoke a cigarette but continued to record the interview with a pocket recording device. The detectives kept Clark handcuffed, reiterated they were acting in their official capacity, and told Clark that they would relay what he said to the primary detectives. Thus, under these circumstances, Clark had no justifiable expectation that his statements were "not subject to interception," NRS 179.440 (defining "oral communication"), by the interviewing detectives. Moreover, even assuming error in the admission of Clark's recorded statements, we conclude that it is harmless because the interviewing detectives could have testified about the substance of the interview. *See* NRS 178.598 (providing the harmless error standard).

Second, Clark has not shown any coercive police conduct during his interrogation. *See Colorado v. Connelly*, 479 U.S. 157, 167 (1986) (holding "that coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment"); *see also Allan v. State*, 118 Nev. 19, 24, 38 P.3d 175, 178 (2002) ("[A] confession is involuntary only if the suspect's ability to exercise his free will was overborne by police coercion."),

---

[2]Clark's failure to challenge his incriminating statements under NRS 179.500 in the district court provides an independent reason to deny relief on this claim. *See Guy v. State*, 108 Nev. 770, 780, 839 P.2d 578, 584 (1992) (declining to consider an issue raised for the first time on appeal).

*overruled on other grounds by Rosky v. State*, 121 Nev. 184, 191 & n.10, 111 P.3d 690, 694 n.10 (2005). And Clark's contention that his feeling tired, hot, sweaty, and nauseated is insufficient to show that his statements were involuntary. *See Passama v. State*, 103 Nev. 212, 214, 735 P.2d 321, 323 (1987) (outlining factors for courts to consider when considering the voluntariness of a confession under the totality of the circumstances); *see also State v. Dobbs*, 945 N.W.2d 609, 632-33 (Wis. 2020) (declining "to assess the voluntariness of [appellant's] statements based solely on . . . his physical and mental condition"). Therefore, we conclude that the district court did not clearly err in finding Clark's statements were voluntary and admissible.

*Sentencing*

Clark argues that the district court abused its discretion by adjudicating and sentencing him as a large habitual criminal. Specifically, Clark contends that the recently amended version of NRS 207.010 should have applied and therefore he could not be adjudicated as a habitual criminal because the State introduced only six prior felony convictions. *Compare* NRS 207.010(1)(b) (2020) (requiring seven felony convictions to prove habitual criminal status), *with* 2009 Nev., Stat. ch. 156, § 1, at 567 (requiring three felony convictions to prove habitual criminal status). We disagree because "unless the Legislature clearly expresses its intent to apply a law retroactively, Nevada law requires the application of the law in effect at the time of the commission of a crime." *State v. Second Judicial Dist. Court (Pullin)*, 124 Nev. 564, 567, 188 P.3d 1079, 1081 (2008); *see also id.* at 571, 188 P.3d at 1083 ("[T]he rule that the penalty parameters for an offense are fixed as of the date of the commission of the offense is fair, logical, and easy to apply. Neither the State nor a defendant may maneuver a sentencing date to take advantage of or avoid a change in a statute."

(internal quotation marks omitted)). Clark committed the charged offenses before the amendment's effective date, and the Legislature gave no indication in the text of NRS 207.010 that it intended to apply the amended statute retroactively. *See* 2019 Nev. Stat., ch. 633, § 86, at 4441-42; 2019 Nev. Stat., ch. 633, § 137, at 4488 (providing that the amendment became effective on July 1, 2020).

Clark also argues that the district court improperly relied on his pending California criminal case at sentencing. After reviewing the record, we disagree. The district court acknowledged that the case had not been adjudicated and read the California police report in considering the totality of Clark's criminal history. It then discussed Clark's numerous parole violations and his commission of the Nevada offenses shortly after being released from prison. Therefore, we conclude that the district court did not abuse its discretion in adjudicating Clark as a habitual criminal and sentencing him to life in prison without the possibility of parole. *See Tanksley v. State*, 113 Nev. 997, 1004, 946 P.2d 148, 152 (1997) (providing that sentencing courts have "very broad discretion in determining that a habitual criminal adjudication would serve the purpose of discouraging [a] repeat offender"); *Silks v. State*, 92 Nev. 91, 94, 545 P.2d 1159, 1161 (1976) ("So long as the record does not demonstrate prejudice resulting from consideration of information or accusations founded on facts supported only by impalpable or highly suspect evidence, this court will refrain from interfering with the sentence imposed.").

We note, however, that the judgment of conviction contains a clerical error—it incorrectly states that Clark pleaded guilty. The record clearly shows that Clark's convictions resulted from a jury trial. Following this court's issuance of its remittitur, the district court shall enter a

corrected judgment of conviction. *See* NRS 176.565 (providing that clerical errors in judgments may be corrected at any time); *Buffington v. State*, 110 Nev. 124, 126, 868 P.2d 643, 644 (1994) (explaining that the district court does not regain jurisdiction following an appeal until this court issues its remittitur). Accordingly, we

ORDER the judgment of conviction AFFIRMED AND REMAND this matter to the district court to correct a clerical error in the judgment of conviction.[3]

_____, C.J.
Parraguirre

_____, J.          _____, Sr.J.
Pickering                                Gibbons

cc:     Hon. Jacqueline M. Bluth, District Judge
        Hon. Linda Marie Bell, Chief Judge
        Sandra L. Stewart
        Attorney General/Carson City
        Clark County District Attorney
        Eighth District Court Clerk

---

[3]The Honorable Mark Gibbons, Senior Justice, participated in the decision of this matter under a general order of assignment.

SUPREME COURT
OF
NEVADA

(O) 1947A