STATE FARM FIRE AND CASUALTY COMPANY, Appellant, v. ALL ELECTRIC, INC., and LEWIS BUILDING CO., INC., Respondents.

No. 13228

ROYAL GLOBE INSURANCE COMPANIES; CHRIS K. BRANDT and IDA MAE BRANDT, Appellants, v. ARTHUR V. ADAMS, dba ADAMS CONSTRUCTION COMPANY, INC., and NOVIKOFF ENGINEERS, Respondents.

No. 13443

March 31, 1983                                      660 P.2d 995

[Rehearing in case No. 13443 denied June 20, 1983]

*Edwards, Hunt, Pearson & Hale,* Las Vegas, for Appellant State Farm Fire and Casualty Company.

*Cromer, Barker, Michaelson, Gillock and Rawlings; Michael K. Mansfield; Beckley, Singleton, DeLanoy & Jemison; Lyles and Austin;* Las Vegas, for Respondents All Electric, Inc., and Lewis Building Co., Inc.

*Galatz, Earl & Biggar,* Las Vegas, Amicus Curiae.

*Morse-Foley* (representing Essex Chemical Corp.), Las Vegas, Amicus Curiae.

*Lionel, Sawyer & Collins* and *Steve Morris* (representing MGM), Las Vegas, Amicus Curiae.

*Greenman, Goldberg & Raby* (representing Royal Globe Insurance Companies); *Goodman, Oshins, Brown & Singer* (representing Chris K. Brandt and Ida Mae Brandt), Las Vegas, for Appellants.

*Cromer, Barker, Michaelson, Gillock & Rawlings* and *Walter R. Cannon* (representing Arthur V. Adams dba Adams Construction Company, Inc.); *Beckley, Singleton, DeLanoy & Jemison; Nitz & Schofield; Dickerson, Miles, Pico & Mitchell* and *Eleissa C. Lavelle* (representing Novikoff Engineers), Las Vegas, for Respondents.

## OPINION

By the Court, Manoukian, C. J.:

These consolidated appeals by appellant insurance companies primarily involve the constitutionality of NRS 11.205.[1]

---

[1]NRS 11.205 provides as follows:

Actions for damages for injury to person or property or wrongful death caused by deficiency in design, planning, supervision of construction or construction of improvements to real property.

1.   No action in tort, contract or otherwise shall be commenced against any person performing or furnishing the design, planning,

That statute essentially provides that six years after substantial completion of a construction project, a party may not sue any person who was engaged in the design, planning, supervision or observation of the construction project or in the construction itself. This protection, however, does not extend to anyone who is also an owner or occupier of the land. *See* NRS 11.205(3). The statute abolishes certain claims for relief rather than extinguishing a remedy as is the case with the limitation statute. *See* Nevada Lakeshore Co. v. Diamond Elec., Inc., 89 Nev. 293, 511 P.2d 113 (1973).

The district court granted summary judgment in favor of each respondent on the ground that the suits were barred under NRS 11.205. Appellants, representing the interests of insured property owners, contend that the statute violates the equal protection and due process clauses of the state and federal constitutions. In agreeing, we conclude that the equal protection claim is dispositive, and find it unnecessary to discuss the due process contention.

The Fourteenth Amendment to the United States Constitution forbids enactments that "deny to any person . . . the equal protection of the laws." Article 4, section 21, of the Nevada Constitution requires that all laws be "general and of uniform operation throughout the State." We have previously held that the standard for testing the validity of legislation under the equal protection clause of the state constitution is the same as the federal standard. *See* Laakonen v. District Court, 91 Nev.

---

supervision or observation of construction, or the construction, of an improvement to real property more than 6 years after the substantial completion of such an improvement, for the recovery of damages for:

(a) Any deficiency in the design, planning, supervision or observation of construction or construction of such an improvement; or

(b) Injury to real or personal property caused by any such deficiency; or

(c) Injury to or wrongful death of a person caused by any such deficiency.

2. Notwithstanding the provisions of NRS 11.190 and subsection 1 of this section, where injury occurs in the sixth year after substantial completion of such an improvement, an action for damages for injury to property or person, damages for wrongful death resulting from such injury or damages for breach of contract may be commenced within 1 year after the date of such injury, irrespective of the date of death, but in no event may an action be commenced more than 7 years after the substantial completion of the improvement.

3. Where an action for damages for wrongful death or injury to person or property caused by any deficiency in an improvement to real property is brought against a person in actual possession or control as owner, tenant or otherwise of such improvement, the limitation prescribed by this section shall not be a defense for such person.

506, 538 P.2d 574 (1975). Consequently, we believe that the following analysis can be applied equally to the state and federal equal protection challenges.

Although the equal protection clause does not deny the state legislature the power to classify, such classifications must be reasonable. Morey v. Doud, 354 U.S. 457 (1957). And where, as here, no suspect classification or fundamental right is involved, our role is to determine whether the classification bears a rational relationship to the legislative purpose sought to be effected. Dandridge v. Williams, 397 U.S. 471 (1970); Laakonen v. District Court, *supra.*

Legislative classifications must apply uniformly to all who are similarly situated, and the distinctions which separate those who are included within a classification from those who are not must be reasonable, not arbitrary. *See* Pacific Indem. Co. v. Thompson-Yaeger, Inc., 260 N.W.2d 548 (Minn. 1977). The statute in question singles out architects and contractors, and insulates them from liability on the expiration of six years. The same statute excludes from its protection, those similarly situated, such as owners and material suppliers. The question, then, is whether there is a reasonable basis for treating architects and contractors engaged in the improvement of real property as a distinct and separate class for the purpose of granting immunity from suit.

A review of the cases involving the constitutionality of statutes similar to Nevada's, demonstrate that the several jurisdictions deciding the question are about evenly split. Respondents argue that a legitimate distinction exists between those included and those excluded from the statute's protection, *i.e.,* those who own or occupy land. They essentially argue that control over the property is the crucial factor. Specifically, they assert that a tenant or landowner may fail to maintain the property adequately or may materially alter the existing improvements. They state that those within the statute's protective shield, such as architects and contractors, are entitled to such protection because they have no control over a project once it is completed and have no opportunity to prevent an abuse by the occupier.

Respondents place great reliance on the Arkansas Supreme Court decision of Carter v. Hartenstein, 455 S.W.2d 918 (Ark. 1970), *appeal dismissed,* 401 U.S. 901 (1971). There, the

Arkansas court stated that: "[p]art of acceptance [of completed construction] is to accept some future responsibility for the condition of the premises . . . . To say that there can be no limitation in perpetuity against a designer or erector of a structure would be in effect to discriminate against professional builders and designers." *Id.* at 920. We remain unpersuaded by *Carter.*[2] Although an act of the legislature is presumed to be constitutional, State ex rel. Tidvall v. Eighth Judicial District Court, 91 Nev. 520, 539 P.2d 456 (1975), our usual deference to legislative declarations cannot be given where the evidence of discrimination is so clear, as it is in the present case.

After thoroughly considering this important question, we are satisfied that the better reasoned cases are those which have struck such statutes as being constitutionally infirm because they improperly grant immunity from suit to a certain class of defendants, without a reasonable basis for that classification. *See* McClanahan v. American Gilsonite Co., 494 F.Supp. 1334 (D.Colo. 1980); Fujioka v. Kam, 514 P.2d 568 (Hawaii 1973); Skinner v. Anderson, 231 N.E.2d 588 (Ill. 1967); Pacific Indem. Co. v. Thompson-Yaeger, Inc., 260 N.W.2d 548 (Minn. 1977); Loyal Order of Moose, Lodge 1785 v. Cavaness, 563 P.2d 143 (Okla. 1977); Broome v. Truluck, 241 S.E.2d 739 (S.C. 1978); Kallas Millwork Corporation v. Square D Co., 225 N.W.2d 454 (Wis. 1975); Phillips v. ABC Builders, Inc., 611 P.2d 821 (Wyo. 1980).[3]

The Illinois Supreme Court was the first to declare a statute,

---

[2]The statute in *Carter* was similar to that in issue in the immediate case and the equal protection challenge was similar as well. The Arkansas Supreme Court upheld the validity of the statute and appeal was taken to the United States Supreme Court. There, the appeal was dismissed for lack of a substantial federal question. While such a dismissal has limited precedential value, the dismissal is generally a binding adjudication of the merits. Hicks v. Miranda, 422 U.S. 332 (1975). Nevertheless, at least six jurisdictions have held similar statutes to be unconstitutional since the *Carter* dismissal in 1971. Obviously, those jurisdictions do not believe the summary disposition in *Carter* is binding. We agree. Although *Carter* may be very persuasive, we do not believe it is dispositive of this appeal. *See* Justice Brennan's concurrence in Mandel v. Bradley, 432 U.S. 173 (1977), (state courts should give appropriate but not conclusive weight to summary dispositions).

[3]It should be noted that other courts, in addition to those cited, have held similar statutes unconstitutional; however, they have done so on grounds other than equal protection. *See, e.g.,* Bagby Elevator and Electric Company, Inc. v. McBride, 291 So.2d 306 (Ala. 1974); Saylor v. Hall, 497 S.W.2d 218 (Ky. 1973).

similar to the one in question,[4] unconstitutional on equal protection grounds. *See* Skinner v. Anderson, *supra*. The rationale in *Skinner* has been relied upon heavily in subsequent decisions in other jurisdictions. In discussing the discriminatory impact of the statute upon others similarly situated, the court in *Skinner* stated:

> If, as the defendant suggests, the objective of the statute is to require trials of actions based upon defects in construction to be held within a relatively short time after the work is completed, that objective is achieved . . . in a discriminatory fashion.

> [O]f all those whose negligence in connection with the construction of an improvement to real estate might result in damages to property or injury to persons more than four years after construction is completed, the statute singles out the architect and contractor and grants them immunity. It is not at all inconceivable that the owner or person in control of such an improvement might be held liable for damage or injury that results from a defective condition for which the architect or contractor is in fact responsible. Not only is the owner or person in control given no immunity; the statute takes away his action for indemnity against the architect or contractor.

> The arbitrary quality of the statute clearly appears when we consider that architects and contractors are not the only persons whose negligence in the construction of a building or other improvement may cause damage to property or injury to persons. If, for example, four years after a building is completed a cornice should fall because the adhesive used was defective, the manufacturer of the adhesive used is granted no immunity. And so it is with all others who furnish materials used on constructing the improvement. But if the cornice fell because of defective design or construction, for which an architect or contractor was responsible, immunity is granted. It cannot be said that the one event is more likely than the other to occur within four years after construction is completed.

*Id.* at 590-91.

Similarly, the Hawaii Supreme Court struck down a statute similar to NRS 11.205. *See* Fujioka v. Kam, *supra*. In addressing what it considered to be an irrational statutory classification, the *Fujioka* court concluded that the statute grants

---

[4]The Illinois statute contained a four year limitation period as opposed to the six year period of NRS 11.205.

immunity to those who, but for the statute, would or could be primarily responsible for the losses, while the owners are exposed to liability for the damages caused by the negligence of the engineer and contractor. That court went on to state:

> The cause of the injuries is the same, the plaintiff is the same and the injuries are the same—but under the statute the plaintiff may not recover from the engineer and the contractor even though the negligence of the engineer and the contractor may have been the sole proximate cause of the injuries suffered by the plaintiff. However, the plaintiff may recover damages from the owners, and the owners will have no right to have the engineer and the contractor reimburse or contribute to them the amount of damages they are required to pay the plaintiff. *We are unable to see any rational basis for treating the engineer and the contractor differently from the owners under the same circumstances.* (Emphasis supplied.)

*Id.* at 571.

We find the rationale of *Skinner* and *Fujioka* both persuasive and applicable to our interpretation of NRS 11.205. Although respondents contend that a legitimate distinction exists between architects and contractors as opposed to owners and manufacturers, we conclude that there is no rational basis for making such a distinction so as to justify granting immunity to one group while at the same time denying it to another.

Although a tenant, landowner or other occupier may allow the property to fall into disrepair or may materially alter existing improvements, the difficulty of defending such a suit after the expiration of the six year period is largely theoretical. For instance, the plans and specifications of architects, engineers, general contractors and most subcontractors are approved by governmental agencies and become public records. *See* Nevada Administrative Code § 239.050.(1982). Therefore, rarely would the modification of an existing building be so substantial within the six year period as to preclude the tracing of liability to the party or parties who should assume responsibility for injuries or loss. Additionally, builders and contractors are usually corporate bodies with a continuity of existence. As such, the concerns of proof and tracing are virtually unfounded since these entities would normally be easily located. Conversely, materialmen and suppliers are often disadvantaged because their materials and workmanship become an integral part of the structure, concealed from view and vulnerable to the elements. These persons are at the mercy of others who handle the construction, or who may be responsible for the ongoing maintenance of the building. Moreover, as recognized in *Skinner* and

*Fujioka,* if we were to uphold the statute, we envision too many inequities and hardships to those who are left uninsulated from liability, because of the statute's inherent unfairness. If we were to uphold the statute, any tort action against designers, architects, suppliers and subcontractors would be barred after six years irrespective of whether or not the defect was apparent, or could have been discovered with reasonable diligence. *See* Loyal Order of Moose, Lodge 1785 v. Cavaness, 563 P.2d 143 (Okla. 1977).

The legislature has the power to create statutory classifications; however, to survive constitutional challenge, any discrimination must satisfy important legislative objectives and, of course, be reasonable. Loyal Order of Moose, Lodge 1785, *supra;* Reed v. Reed, 404 U.S. 71 (1971). In the instant case, we believe it is clear that NRS 11.205 arbitrarily discriminates against a certain class of individuals, *i.e.,* owners and material suppliers. Public policy reasons may exist to justify precluding legitimate claims from being litigated after the lapse of a certain number of years. If, as here, however, one class of defendants is arbitrarily excluded from this protection, the equal protection clauses of the state and federal constitutions are violated.

The equal protection question is dispositive of this appeal. We therefore decline to consider the other issues or contentions raised by the parties. Accordingly, the judgment of the lower court is reversed and the case remanded for further proceedings consistent with this holding.

STEFFEN and GUNDERSON, JJ., and ZENOFF, SR. J.,[5] concur.

SPRINGER, J., dissenting:

I dissent and would uphold the legislature's action and uphold the statute's constitutionality.

Appellant insurance companies, representing interests of insured property owners, have challenged the constitutionality of NRS 11.205[1] on several grounds, but primarily on the grounds that the statute violates due process and equal protection guarantees of the state and federal constitutions. Appellants are joined by several amici curiae.

---

[5]The Chief Justice designated THE HONORABLE DAVID ZENOFF, Senior Justice, to sit in this case in the place of THE HONORABLE JOHN MOWBRAY, Justice, who voluntarily disqualified himself. Nev. Const., art. 6, § 19, SCR 10.

[1]NRS 11.205 provides as follows:

11.205 Actions for damages for injury to person or property or wrongful death caused by deficiency in design, planning, supervision of construction or construction of improvements to real property.

1. No action in tort, contract or otherwise shall be commenced against any person performing or furnishing the design, planning,

I conclude that the statute is constitutionally valid.

NRS 11.205 frees certain design professionals and contractors engaged in the building construction industry from civil liability relating to real property improvements six years following substantial completion of the project. NRS 11.205 is a statute of repose. *See* Nevada Lakeshore Co. v. Diamond Elec., Inc., 89 Nev. 293, 511 P.2d 113 (1973). The statute functions to abolish certain claims for relief rather than to cut off a remedy as is the case with a limitation statute. It immunizes those engaged in the design, planning, supervision or construction of real property improvements six, and in certain instances seven, years from completion regardless of the date of discovery of any defect and regardless of the nature of the claim.

## DUE PROCESS

Because of the repose granted by the statute, injured parties may be deprived of certain claims for damages arising out of negligent design or construction, and defendant landowners may find themselves unable to obtain indemnity or contribution from other tortfeasors because the six-year statutory period has elapsed.

In this case there can be no doubt that the statute has eradicated valuable substantive rights, but this does not require an invalidation of the statute on constitutional grounds. The legislature is free to create rights and is equally free to abrogate

---

supervision or observation of construction, or the construction, of an improvement to real property more than 6 years after the substantial completion of such an improvement, for the recovery of damages for:

(a) Any deficiency in the design, planning, supervision or observation of construction or construction of such an improvement; or

(b) Injury to real or personal property caused by any such deficiency; or

(c) Injury to or wrongful death of a person caused by any such deficiency.

2. Notwithstanding the provisions of NRS 11.190 and subsection 1 of this section, where injury occurs in the sixth year after substantial completion of such an improvement, an action for damages for injury to property or person, damages for wrongful death resulting from such injury or damages for breach of contract may be commenced within 1 year after the date of such injury, irrespective of the date of death, but in no event may an action be commenced more than 7 years after the substantial completion of the improvement.

3. Where an action for damages for wrongful death or injury to person or property caused by any deficiency in an improvement to real property is brought against a person in actual possession or control as owner, tenant or otherwise of such improvement, the limitation prescribed by this section shall not be a defense for such person.

rights which have not yet vested. O'Brien v. Hazelet & Erdal, 299 N.W.2d 336 (Mich. 1980); Howell v. Burk, 568 P.2d 214 (N.M.App. 1977), *cert. denied,* 569 P.2d 413 (N.M. 1977). Examples of this proper exercise of legislative power are found in the legislative elimination of claims for criminal conversation and alienation of affection. With reference to the statute in question the legislature has in similar fashion eliminated the right to sue the enumerated building professionals after the passage of the statutory six-year period. This the legislature clearly has the power to do, and requirements of due process of law are met if the statute bears a rational relationship to a legitimate state purpose. *See* Klein v. Catalano, 437 N.E.2d 514 (Mass. 1982). The subject statute's placing of a time limitation on the potential liability of designers and contractors is clearly carrying out a proper and legitimate legislative purpose, namely, keeping such persons from remaining potentially liable for the lifetime of a building or for their own lifetimes. This kind of enduring liability could severely hamper the ability of those engaged in building construction to defend against lawsuits and could thwart creative developments in construction and design. The statute is not violative of constitutional due process rights, state or federal.[2]

## EQUAL PROTECTION

The foundation of appellants' case is their contention that the statute violates state and federal guarantees of equal protection of the laws. The fourteenth amendment to the United States Constitution forbids enactments that "deny to any person . . . the equal protection of the laws." Article 4, section 21, of the Nevada Constitution requires that all laws be "general and of uniform operation throughout the State." In my opinion the statute is in harmony with both federal and state constitutions.

This court has previously viewed the foregoing federal and state constitutional provisions as being synonymous. *See* Laakonen v. District Court, 91 Nev. 506, 538 P.2d 574 (1975). There being no reason to depart from that view in the immediate case, I believe that identical analysis may be applied to the

---

[2]Appellants also have argued that wholly blameless landowners may be required to bear liability for the negligence of architects or contractors. I disagree. A plaintiff may not recover against a landowner without first proving the negligence of the landowner. *See* Horvath v. Burt, 98 Nev. 186, 643 P.2d 1229 (1982) (MOWBRAY, J., dissenting). And though a negligent landowner may be unable to obtain contribution from construction industry tortfeasors of equal or greater culpability, this possibility is not unique to the immediate situation.

state and federal equal protection challenges. A statute which is not based upon a suspect classification and which does not impinge on a fundamental right satisfies the equal protection clause if the classification is rationally related to legitimate government interest. Dandridge v. Williams, 397 U.S. 471 (1970); Laakonen v. District Court, *supra.*

The parties apparently agree that the statute has a legitimate purpose: providing repose for otherwise indefinite potential liability. The capacity of the statute to achieve that objective is not challenged. The gist of appellants' objection to the statute is that it unfairly discriminates against others similarly situated, most notably landowners and occupiers and suppliers of materials.

A legitimate distinction exists between those engaged in the design, supervision and construction of real property improvements and those who own or occupy land. A primary factor in the distinction is control over the property. A tenant or landowner may allow the property to fall into disrepair or may improperly modify existing improvements. Since an architect or contractor generally has no control over a project once it is completed, there is no opportunity to prevent abuse of property. I believe that "[p]art of acceptance [of completed construction] is to accept some future responsibility for the condition of the premises. . . . To say that there can be no limitation in perpetuity against a designer or erector of a structure would be in effect to discriminate against professional builders and designers." Carter v. Hartenstein, 455 S.W. 2d 918, 920 (Ar. 1970), *appeal dismissed,* 401 U.S. 901 (1971).

I also believe that a valid distinction exists between suppliers of materials and other members of the construction industry.[3]

The distinction lies in the quality control attainable in the mass production of materials. Each construction project is in a certain sense unique because of environmental differences and variations in design, while manufactured materials are ordinarily the product of standardized processes. The advantage of standardization is that it gives materialmen greater control over their products; the great degree of control justifies a longer time period for potential liability.

---

[3]In Jasinski v. Showboat Operating Co., 459 F.Supp. 309 (D.Nev. 1978), the court interpreted NRS 11.205 to mean that suppliers of materials were included within the protection of the statute. In reaching this conclusion, the court relied upon our decision in *Nevada Lakeshore, supra.* I would reject this interpretation. The holding in *Nevada Lakeshore* concerned only a statutory interpretation of the running of the time periods and should not be construed as an interpretation of the application of the statute to specific parties.

Since a legitimate distinction exists between the class of person protected by the statute and those excluded from its protection, I conclude that the statute offends neither the state nor the federal equal protection clauses.[4]

## CONCLUSION

If this court were to uphold the validity of NRS 11.205 it would join a substantial majority of those jurisdictions with similar statutes which have also concluded that this form of legislation is constitutional. In doing so I recognize the hardship that some injured parties may suffer; still, the legislature has apparently weighed these factors against those favoring the granting of a time-limited immunity to designers and builders. The Nevada Supreme Court should not interfere with legislative determinations that are made within constitutional bounds.

I would affirm the judgment of the district court.

---

[4]As an independent basis for upholding the statute against a federal equal protection challenge, I am persuaded that the decision in Carter v. Hartenstein, *supra,* is dispositive of the issue. The statute under attack in *Carter* was nearly identical to that in issue in the immediate case, and the equal protection challenge was virtually the same as well. Following the Arkansas Supreme Court decision upholding the validity of the statute, appeal was taken to the United States Supreme Court. There the appeal was dismissed for lack of substantial federal question. Although such a dismissal has limited precedential value, affirming only the judgment without accepting the reasoning of the lower court, the dismissal is nonetheless a binding adjudication of the merits. Mandel v. Bradley, 432 U.S. 173 (1977); Hicks v. Miranda, 422 U.S. 332 (1975). Because of the virtual identity of the statutes, both of which exclude possessors of land and suppliers of materials, I believe that *Carter* controls in the present case.