By the Court, SILVER, C.J.:
In this appeal, we consider whether the district court erred by instructing a jury, in a criminal case for exploitation of a vulnerable person and theft, that "[a] person's status as a joint account holder does not by itself provide lawful authority to use or transfer another['s] assets for their own benefit." We conclude this instruction is inconsistent with NRS 100.085, and it does not accurately and completely reflect the reasoning and conclusion in Walch v. State, 112 Nev. 25, 909 P.2d 1184 (1996). Accordingly, we hold the jury instruction was a misstatement of law, and it was error to give the instruction. Because the State has failed to demonstrate the error was harmless, we reverse.
FACTS AND PROCEDURAL HISTORY
Helen Natko and Delford Mencarelli began dating in 1982, a year or two after their respective spouses passed away. During a visit to Pennsylvania in May 2012, Mencarelli was hospitalized for low blood sugar, a complication of his diabetes. After the couple returned to their shared home in Las Vegas, Natko and Mencarelli gave each other durable power of attorney, purportedly so that Natko could help care for Mencarelli. Four days later, Mencarelli added Natko as a joint account holder on his Las Vegas credit union account. In July 2013, Natko withdrew $195,000 from the couple's joint bank account and temporarily placed it into her personal bank account. She returned the money to the couple's joint account within the month. Mencarelli died approximately two years later.
Nine months after Mencarelli's death, the State charged Natko with exploitation of a vulnerable person and theft based on the act of withdrawing the money from the joint account in 2013.[1] At trial, the State proposed jury instruction 18, which stated: "A person's status as a joint account holder does not by itself provide lawful authority to use or transfer another['s] assets for their own benefit." This language was taken nearly verbatim from Walch. Natko objected to the instruction, arguing it was inaccurate under the current version of NRS 100.085, which was amended in 1995. The district court, relying on Walch, ultimately gave the instruction. A jury found Natko guilty on both counts,[2] and the district court sentenced her to a suspended aggregate prison term of 36 *682 to 144 months and placed her on probation. This appeal follows.
ANALYSIS
Natko argues that jury instruction 18 was a misstatement of law because it directly contradicts NRS 100.085, and the district court incorrectly relied on Walch in giving the instruction because Walch was decided under a prior version of NRS 100.085. The State counters that jury instruction 18 was a correct statement of law that was not overruled by the amendments to NRS 100.085 and, therefore, the district court properly relied on Walch.
"District courts have broad discretion to settle jury instructions." Cortinas v. State, 124 Nev. 1013, 1019, 195 P.3d 315, 319 (2008). "While we normally review the decision to [give or] refuse a jury instruction for an abuse of that discretion or judicial error, we review de novo whether a particular instruction, such as the one at issue in this case, comprises a correct statement of the law." Id. Further, whether jury instruction 18 was an accurate statement of the law involves statutory interpretation, which we also review de novo. See Bigpond v. State, 128 Nev. 108, 114, 270 P.3d 1244, 1248 (2012). When interpreting a statute, we first examine the statute's plain meaning. Id. "[I]f the statute is clear, we do not look beyond the statute's plain language." Sheriff v. Witzenburg, 122 Nev. 1056, 1061, 145 P.3d 1002, 1005 (2006).
NRS 100.085 was amended to its current version in 1995.[3] 1995 Nev. Stat., ch. 426, § 1, at 1054-55. NRS 100.085(1) provides, in relevant part: "If an account is intended to be held in joint tenancy, the account or proceeds from the account are owned by the persons named, and may be paid or delivered to any of them...." (Emphasis added.) And, as relevant to this appeal, NRS 100.085(4) provides that, "[f]or the purposes of this section, unless a depositor specifically provides otherwise, the use by the depositor of [joint account] ... in designating the ownership of an account indicates the intent of the depositor that the account be held in joint tenancy." When read together, the plain language of NRS 100.085(1) and (4) establishes a presumption that a person's status as a joint account holder provides that person with ownership of, and authority to use, the funds in the joint account.[4]
In contrast to NRS 100.085, jury instruction 18 stated that a person's status as a joint account holder alone does not provide the authority to use another person's assets. Jury instruction 18 was inconsistent with NRS 100.085 because it implied Natko did not have lawful authority to use or transfer the funds in the joint account for her own benefit. The State argues that the instruction was nevertheless a correct statement of the law under Walch. We disagree.
In Walch, the elderly victim gave the defendant, Walch, durable power of attorney that "expressly precluded Walch from using [the victim's] assets for Walch's own legal *683 obligations, including but not limited to support of the agent's dependents." 112 Nev. at 27, 909 P.2d at 1185 (internal quotation marks omitted). Walch thereafter opened two joint bank accounts with the victim's money that named Walch and the victim as joint account holders, and Walch wrote checks from those accounts for her personal use. Id. at 27-29, 909 P.2d at 1185-86. On appeal, Walch cited to NRS 100.085(1) and argued that she could not be guilty of theft as a matter of law because, as a party on the joint accounts, she had lawful authority to withdraw any or all of the funds from those accounts and use them as she wished. Id. at 30-31, 909 P.2d at 1187-88. The supreme court rejected this argument, concluding that "Walch's mere status as a party to the joint accounts did not provide her with lawful authority to use [the victim's] assets for her own benefit and therefore did not preclude her conviction for theft." Id. at 33, 909 P.2d at 1189. This conclusion was based on the observation that the jury "could have concluded that Walch placed [the victim's] funds into the two accounts with the intention of withdrawing them later for her own benefit." Id. The court reasoned that "[i]f so, Walch's felonious intent and actions commenced before such monies reached the two accounts, and her status as a joint legal owner of the account funds would not shield her from culpability for theft of funds subsequently withdrawn and misused." Id.
In Walch , therefore, the supreme court did not conclude that NRS 100.085 does not create a presumption of ownership by a joint account holder of the funds in a joint account. Rather, Walch is best understood to stand for the proposition that despite the presumption of ownership established by NRS 100.085, a person named on a joint account can still be, under some circumstances, convicted of theft for withdrawing and/or misusing funds from the joint account. The State is correct that this aspect of Walch was not impacted by the 1995 amendments to NRS 100.085. This is so because there is nothing in NRS 100.085 that precludes a joint account holder from being convicted of theft for the withdrawal and/or misuse of funds in the joint account. However, based on the reasoning in Walch , in order to convict a joint account holder of theft based on the withdrawal and/or misuse of funds from a joint account, the State must allege and establish that the criminal intent arose prior to the funds being deposited into the joint account.
Because jury instruction 18 broadly stated: "A person's status as a joint account holder does not by itself provide lawful authority to use or transfer another['s] assets for their own benefit," it did not accurately reflect the reasoning and conclusions in Walch and was therefore incomplete. Notably, the instruction did not identify the circumstances under which a person named as a party on a joint account could be convicted of theft based on withdrawal and/or misuse of funds from the joint account.[5] Accordingly, we conclude jury instruction 18 was not a correct statement of the law and it was error to give the instruction.
Because Natko objected to the use of jury instruction 18, we review the error under the harmless error standard. See Barnier v. State, 119 Nev. 129, 132, 67 P.3d 320, 322 (2003). "[T]he State bears the burden of proving that the error was harmless." Polk v. State, 126 Nev. 180, 183 n.2, 233 P.3d 357, 359 n.2 (2010).[6] To meet this burden, it may *684 be necessary for the State to file a respondent's appendix that includes "those documents necessary to rebut appellant's position on appeal which are not already included in appellant's appendix." NRAP 30(b)(4). Reversal will be warranted unless the State can show "it is clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error." Nay v. State, 123 Nev. 326, 334, 167 P.3d 430,435 (2007) (internal quotation marks omitted).
The State fails to argue on appeal, let alone demonstrate from the record, that the error is harmless. A joint appendix was not filed in this appeal and, although recognizing Natko did not provide this court with a copy of the trial transcripts, the State did not file a respondent's appendix and provide the trial transcripts to this court. Nothing in the record before this court indicates that Mencarelli or Natko specifically provided that they did not intend to hold the joint account in joint tenancy. Therefore, jury instruction 18 was not a correct statement of the law, and it improperly implied to the jury that Natko did not have lawful authority to use and/or withdraw the funds in the joint account. The State alleged Natko committed the crimes of exploitation of a vulnerable person and theft based on the act of withdrawing money from Natko and Mencarelli's joint account. Thus, without the trial transcripts, or anything to show the facts are like those in Walch, we cannot say that the error was harmless. Because the State has failed to meet its burden and demonstrate the error is harmless, we conclude the error warrants reversal.
CONCLUSION
The district court erred by giving jury instruction 18 because it was not a correct statement of the law. The instruction was inconsistent with NRS 100.085 because it broadly stated that a person's status as a joint account holder did not give her the authority to use another's assets within the joint account for her own benefit. Further, the instruction did not accurately reflect the reasoning and conclusions in Walch . Because the State has failed to meet its burden to demonstrate this error was harmless, we reverse and remand for further proceedings consistent with this opinion.
I concur:
Gibbons, J.

The dissent speculates that Mencarelli "may" have lacked mental capacity at the time the joint bank account was created a year prior, thus voiding the joint account and removing any legal claim Natko may have had to the funds within the account. This is mere speculation, and no evidence exists of this in our record. Tellingly, the State's information charged Natko with "willfully, unlawfully and feloniously" exploiting a vulnerable person and theft on July 5, 2013, by withdrawing the $195,000 from a bank account on which she was listed as a joint tenant. The withdrawal of money occurred a full year after the date from which she and Mencarelli set up the joint bank account. Significantly, too, the State never charged Natko with exploitation or fraud for any actions prior to the date of the withdrawal of funds from the joint bank account.

The judgment of conviction erroneously states Natko was convicted pursuant to a guilty plea.

We recognize that the opinion in Walch was issued in 1996. However, Walch is not controlling here, because the defendant, Walch, was charged based on acts that were committed before the amendment of NRS 100.085, and therefore, the Walch court would have considered the pre-amendment version of NRS 100.085 when deciding the appeal. See State v. Second Judicial Dist. Court (Pullin), 124 Nev. 564, 568, 188 P.3d 1079, 1081 (2008) (stating, in the context of addressing sentencing penalties, "the law in effect at the time of the commission of a crime governs the prosecution of criminal offenses").

Because the statute is clear, we need not look to the legislative history to determine the meaning of the statute. See Witzenburg, 122 Nev. at 1061, 145 P.3d at 1005. Nevertheless, we note that the legislative history expressly demonstrates that the 1995 amendments to NRS 100.085 were specifically intended to clarify that each party on a joint account has a right to funds in the account and the right of survivorship to funds in the account upon the death of one of the account holders. See Hearing on S.B. 424 Before the Assembly Judiciary Comm., 68th Leg. (Nev., June 15, 1995) (John Sande, representing the Nevada Bankers Association, testified that "if it is held as a joint tenancy, as that is defined in [NRS 100.085 ] under Subsection 4 ... either party, or any party that [is] on the account, has the right to those funds, that they will pass to the survivor on the death so that there's certainty," and, upon inquiry, he clarified that "[u]nder any interpretation," any party on a joint account, even if the parties do not live in the same house and have different families, "could take all the funds out of that account.").

A jury instruction that accurately reflects the reasoning and conclusions in Walch may have stated the following: A person's status as a joint legal owner of account funds does not shield the person from culpability for the taking of those funds if the State can demonstrate that the person's criminal intent and actions commenced before the money was placed into the joint account.

The dissent argues that the lack of trial transcripts in the record demands an affirmance. However, because the State failed to argue harmless error after Natko alleged reversible error by the district court, the State waived its argument that harmless error applies. Polk, 126 Nev. at 183 n.2, 233 P.3d at 359 n.2 ("[A respondent] who fails to include and properly argue a contention in the [respondent's] brief takes the risk that the court will view the contention as forfeited." (internal quotations and citation omitted) ). And, because the jury instruction given here was incomplete, as a matter of law, we are constrained to reverse under the circumstances of this case. See Cortinas , 124 Nev. at 1019, 1023-27, 195 P.3d at 319, 322-24 (reviewing de novo whether a jury instruction is a correct statement of law and addressing the effect of instructional errors).